SAME TERM.    *Before the same Justices.*

## THE TRUSTEES OF ST. MARY'S CHURCH IN THE CITY OF ALBANY *vs.* CAGGER.

Secondary and even presumptive proof is admissible to fix the liability of a corporation, and to prove its corporate acts.

The omission of a corporation to make a record of its own doings, will not be allowed to prejudice the rights of a party who has, in good faith, relied upon an official assurance of its corporate act.

Accordingly, where resolutions were adopted by the trustees of a religious society, acknowledging the justness of a claim made by the plaintiff against the corporation, fixing the amount thereof, and agreeing to pay the same within a specified time, were duly certified by the secretary of the board of trustees, and transmitted to the plaintiff, who thereupon assented to the proposition contained, in the resolutions, and agreed to accept the sum offered by the trustees; *Held*

that an action would lie against the corporation, notwithstanding it had omitted to make a record of the vote of its board of trustees upon the resolutions.

*Held, also,* that the plaintiff could recover, upon the promise contained in the resolutions, under a count upon an account stated.

A motion for a nonsuit, founded upon the objection *that the plaintiff has shown no right to recover,* is entirely too general and indefinite, and can not, therefore, be sustained.

So, if the objection is *that the evidence does not entitle the plaintiff to recover under the declaration.*

The ground relied on should be so specifically stated that the court, and the opposite counsel, may understand the real point which the defendant intends to raise.

ERROR to the Albany mayor's court. The defendant in error was plaintiff below. The action was assumpsit. The declaration contained the common money counts and a count upon an account stated. The defendants pleaded non-assumpsit, and gave notice that they would rely upon the statute of limitations. Upon the trial the plaintiff below offered in evidence the book of records of the defendants, containing the minutes of the proceedings of the trustees. It appeared from such record that at a meeting held on the 6th day of March, 1844, a committee to whom a claim of Susannah Cagger against the trustees of St. Mary's church had been referred, reported that they had examined the claim and the proofs submitted to them in support thereof, and that they found the facts substantially as follows: That William Cagger, the husband of the said Susannah, in his lifetime was one of the trustees of St. Mary's church and while a trustee became personally liable, with others of the trustees, for certain debts of the church, the whole of which, he alone was afterwards, to wit, on the 21st day of May, 1816, compelled to pay, out of his own individual property, amounting all to the sum of $1800, to secure which the trustees gave him a deed of part of the church lot. That some time in the year 1826, the trustees of the church paid $800 to the said Susannah Cagger on account of the sum so paid by her late husband, and from the inability of the church then to make provision for the payment of the whole sum advanced by the said William Cagger, nothing beyond the said sum of $800 was ever paid to him or his estate, leaving still due and unpaid the sum of $1000

of principal, with interest from 1826, and the interest of $1800 from 1816 to 1826, amounting in the whole to $3520; that Bishop Hughes had advised the trustees, if they were satisfied that the claim of Mrs. Cagger was just, to pay it, though not recoverable at law, but he did not think it right to charge interest; that the committee being perfectly satisfied of the justice of the claim of Mrs. Cagger, recommended the adoption of the following resolutions:

" *Resolved,* That the trustees of St. Mary's church of the city of Albany, being justly indebted to the estate of William Cagger deceased, in the sum of one thousand dollars, balance of a sum of money paid by him in his lifetime out of his individual property for certain debts of said church, and for which he personally became liable while one of the trustees of said church, will repay the said sum of $1000, with $200 in consideration of interest, to Susannah Cagger, the widow of said William, within three years from the date of this resolution, which is to be in full of all demands against said church.

*Resolved,* That the secretary of the board of trustees transmit to the said Susannah Cagger a copy of this report and resolutions."

A copy of this report and resolutions was delivered to Mrs. Cagger, with a certificate signed by the secretary of the board of trustees, that the same were true copies from the minutes of the board of trustees, adopted at a meeting of the trustees on the 6th day of March, 1844. It was also proved by the secretary that Mrs. Cagger accepted the proposition. It did not appear from the record that the report, or any resolution thereon, had been adopted by the trustees, but the secretary and one other trustee testified that the report and resolutions were adopted. The counsel for the defendants below objected to the resolutions being received in evidence, upon the ground that their adoption could not be proved by parol, and also upon the ground that they were not proper evidence under a declaration containing merely the common counts, and a count upon an account stated. These objections were overruled by the court, and the defendants' counsel excepted. These proceedings having been

read in evidence, the plaintiff rested, and the defendants' counsel moved for a nonsuit upon the following grounds : 1. That the plaintiff had shown no right to recover. 2. That the evidence did not show that the board of trustees had adopted or passed any resolutions, and if they had, it did not entitle the plaintiff to recover. 3. That the evidence did not entitle the plaintiff to recover under the declaration in this cause. The motion for a nonsuit was denied, and the defendants' counsel excepted. The court charged the jury that upon the evidence the plaintiff was entitled to recover $1200 with interest from the 6th of March, 1847, and the defendants' counsel excepted to the charge. The jury rendered a verdict for $1209.33, for which sum, with $102,64 for costs, judgment was perfected.

*D. Wright*, for plaintiffs in error.

*R. W. Peckham*, for defendant in error.

*By the Court*, HARRIS, J. The first, perhaps I may say the principal question presented in this case, relates to the evidence of the adoption, by the plaintiffs in error, of the report and resolutions, a copy of which was transmitted to Mrs. Cagger. It is insisted by the counsel for the plaintiffs· in error that the court below erred in allowing the plaintiff there to give parol proof of such adoption. The objection was not put upon the ground that higher evidence existed in the minutes of the proceedings of the board of trustees ; for it appeared affirmatively that no record was made of the vote adopting the report and resolutions. But it was contended that, no such vote of the trustees being on record, secondary evidence could not be admitted to prove that such a vote had actually been passed. I do not, however, so understand the rule of evidence applicable to the acts of corporations. Formerly, I admit, it was supposed that the acts of corporations could only be established by positive record evidence. It was once supposed that no corporate act could be binding without being reduced to writing and bearing a corporate seal. But these doctrines have long since

ceased to be maintained by our courts. On the contrary, it is now perfectly well settled, that the acts of corporations may be proved in the same manner as the acts of individuals. If there be no record evidence, they may be proved by the testimony of witnesses, and even where no direct evidence of such acts can be given, facts and circumstances may be proved from which the acts may be inferred. Thus, in *Bank of Columbia* v. *Patterson's administrators*, (7 *Cranch*, 299,) a contract had been executed under seal between Patterson and a committee of the directors of the bank, for building a banking house. The work having been done, Patterson, instead of bringing his action against the committee upon their express contract, as he might have done, brought *indebitatus assumpsit* against the bank. It was held, upon error to the circuit court of the district of Columbia, that though an action might have been sustained against the committee personally, yet as the whole benefit resulted to the corporation, the jury might legally infer, from the evidence in the case, that the corporation had adopted the contracts of the committee, and had voted to pay the whole sum which should become due under the contracts, and that the plaintiff's intestate had accepted their engagement. (*See also American Ins. Co.* v. *Oakley*, 9 *Paige*, 496 ; *United States Bank* v. *Dandridge*, 12 *Wheat.* 64 ; *Perkins* v. *Washington Ins. Co.* 4 *Cowen*, 645 ; *Magill* v. *Kauffman*, 4 *Serg. & Rawle*, 317.) The latter case was ejectment, brought to recover land claimed by a religious corporation. The supreme court of Pennsylvania held that the acts and declarations of the trustees of the corporation, while transacting its business, and also what passed at meetings of the congregation when assembled on business, might be proved to show their possession of the land and the extent of their claim. "This," says Justice Story, in commenting upon that decision, "must necessarily have proceeded upon the ground, that the acts of corporate agents, and even of aggregate bodies corporate, may be established independent of written minutes of their proceedings." Authorities might be multiplied to show, what I regard as the well established rule, that secondary evidence and even presumptive proof is admissible

to fix the liability of a corporation. Reason and justice alike forbid that the omission of a corporation to make a record of its own doings, should be allowed to prejudice the rights of a party, who has, in good faith, relied upon an official assurance of its corporate act. In the case at bar a copy of a report made by their own committee, to the defendants' board of trustees, and resolutions purporting to have been adopted by the board in conformity with the recommendations of that report, certified in the usual course of business by the secretary of the board, were delivered to the plaintiff. These resolutions proposed terms for the adjustment of a claim made by the plaintiff upon the defendants. It is proved that the report was made to the board of trustees. It is proved that the resolutions were actually adopted by a vote of the board. It is proved that the plaintiff, upon receiving copies of the report and resolutions, assented to the proposition contained in them, and agreed to accept the sum offered by the defendants. After this, the defendants ought not, in common fairness, to be allowed to question the validity of their own act, on the ground that they had themselves omitted to make a record of the vote of their own board of trustees. The court below, therefore, decided correctly, not only in admitting the evidence, but also in holding, as there was no countervailing evidence, that, upon this evidence, the plaintiff was entitled to recover.

The motion for a nonsuit was also properly denied. The first ground upon which the defendants relied was that the plaintiff had shown no right to recover. This was entirely too general and indefinite. The ground relied upon should have been so specifically stated that the court and the opposite counsel might understand the real point which the party intended to raise. This is due to the court, to enable it to determine the question intelligently. It is also due to the opposite party, that he may, if he can, obviate the objection by further evidence. The rule is well settled, and founded in practical wisdom. (*See Underhill* v. *Pomeroy,* 2 *Hill,* 603; *affirmed upon error,* 7 *Id.* 388.) But, to say that a plaintiff should be nonsuited because he has shown no right to recover, amounts to little else than to

The Trustees of St Mary's Church *v.* Cagger.

move for a nonsuit on the ground that the plaintiff *ought* to be nonsuited. No one can say, looking at this first ground of the motion, what question or proposition the defendants' counsel intended to present. If, as may perhaps be inferred from the argument, though certainly not from any thing in the record, it was intended to present the point that the plaintiff was not shown to be the legal representative of William Cagger, it should have been so presented as to apprize her counsel that such was the objection, that he might, if in his power, offer further proof to meet it.

The second ground of the motion is sufficiently answered by what has been said in relation to the admissibility and effect of parol evidence to prove the corporate acts of the defendants.

The other ground of the motion for a nonsuit is, I suppose, intended to raise the objection that the declaration is not adapted to the cause of action as proved. This objection, too, was so general as to bring it within the rule already stated. It is stated in very nearly the same terms as in *Underhill* v. *Pomeroy*. In that case it was objected that *the proof did not sustain the declaration.* It was held that the objection was too general to enable the defendant to avail himself of the point. In this case the objection is that *the evidence did not entitle the plaintiff to recover under the declaration.*

But conceding the objection to have been so taken as to present the question relied upon, I think the decision below was right. At the first I had some difficulty in applying the proof to a count for money had and received by the defendants to and for the use of the plaintiff. Nor am I prepared to say now, that such a count is adapted to the cause of action as proved. A special count would have been more appropriate. But however that may be, I am satisfied that the plaintiff was entitled to recover under the count in the declaration on *an account stated.* The acknowledgment, by the defendant, that a certain sum is due, creates an implied promise to pay the amount, and it is not necessary to set forth the subject matter of the original debt. " The present rule," says Chitty, " is, that if a fixed and certain sum is admitted to be due to a plaintiff, for which an

action would lie, that will be evidence to support a count upon an account stated." (1 *Chit. Pl.* 358, *tit. Account Stated. See also Clute* v. *Small,* 17 *Wend.* 238; 1 *Cowen's Tr.* 234.) The resolution of the defendants was, that *being justly indebted* to the estate of William Cagger in the sum of $1000 balance, &c. they will *repay* that sum, with $200 in consideration of interest, *to the plaintiff,* his widow, in full of all demands. Here are all the elements necessary to sustain an action upon an account stated, and perhaps, also, upon a count for money had and received.

My opinion, therefore, is that the judgment below should be affirmed.

Judgment affirmed.

