BRIDGFORD *v.* CITY OF TUSCUMBIA.*

(*Circuit Court, N. D. Alabama.* 1881.)

1. MUNICIPAL CORPORATION—MINUTES.
 The rights of creditors or of third persons cannot be prejudiced by the neglect of the council to keep proper minutes, against the corporation; what the council in fact did may be shown by evidence *aliunde* the record kept by it.

2. LOBBYING.
 After the council of a municipal corporation had practically agreed to make a purchase from the plaintiff, but deferred final action until the sense of the tax-payers could in some manner be taken upon the subject, the plaintiff agreed, in the presence of the council, to pay the mayor a small sum for circulating the petition among the tax-payers. *Held,* under the facts of the case, that this did not amount to lobbying or corruption so as to taint with illegality the contract of purchase subsequently entered into.

This suit is brought on three promissory notes purporting to have been given by the city of Tuscumbia, and signed by J. J. Davis, mayor, and J. H. Simpson, secretary, with the seal of the city attached; all dated August 28, 1877, each for $750, with 6 per cent. interest from date, payable, respectively, in 18, 30, and 42 months after date,

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

for a No. 3 chemical fire-extinguisher engine. The defense is—(1) *Non est factum*; (2) that the city of Tuscumbia never purchased the engine for which the notes purport to have been given; (3) that the consideration of the said notes failed, the said engine being worthless as a fire extinguisher.

The evidence shows that one Fitch, agent for the Babcock Manufacturing Company, on or about July 9, 1877, called on the mayor of the city of Tuscumbia and proposed to sell the city an engine for the extinguishment of fires, and asked that a meeting of the mayor and board of aldermen should be convened to consider the proposition. A meeting was called on the ninth of July, at which were present. according to minutes of the board, the mayor, Davis, and Aldermen Aydlett, Roedy, and Patterson, three of the four aldermen of which the board was composed. At this meeting Fitch made his proposition in writing, which was, in effect, to sell the city a No. 3 Champion chemical engine, as per printed descriptions, for $2,250, payable in three equal payments, at 18, 30, and 42 months, with 6 per cent. interest; the engine to be delivered at Louisville within 60 days, the city to pay freight. This proposition was not finally acted upon at this meeting, it being suggested that the sense of the tax-payers should be taken by petition before final action.

It was then agreed by Fitch, in the presence of the aldermen, that he would give the mayor $25 for the time and trouble required if he (the mayor) would circulate the petition. Accordingly, the mayor, Davis, circulated a petition and obtained many names of tax-payers thereto, making no secret of, but rather publishing, the fact that he was to be paid therefor. On the tenth of July, as appears by the evidence of the mayor, and Aldermen Patterson and Aydlett, and Secretary Simpson, but of which the minutes of the board make no mention, a meeting of the board was had, and the petition of the tax-payers having been presented, the proposition of Fitch was accepted. Fitch having left town in the mean time, his written proposition was indorsed: "Accepted July 10, 1877." "Signed, Joe J. Davis, Mayor of Tuscumbia. J. H. Simpson, Sec.;" with the seal of the city attached; and the same was forwarded by mail to Fitch, at Louisville, Kentucky. Thereafter, about August 28, 1877, the engine and appurtenances, as per proposition, were delivered at Tuscumbia, the city treasurer paying the freight thereon. A trial of the engine was then had, in the presence of the mayor and other dignitaries, and a number of the citizens of the town, which trial was satisfactory; and thereupon the engine was accepted and the notes in suit

given. As appears by the minutes of the board on the fourteenth of August, 1877, the mayor and marshal were appointed a committee to have an engine-house and stable erected, and on the eighth of October following, the mayor's account for building the engine-house was allowed, and steps were taken towards selecting a fire company.

The engine remained in the custody of the city authorities, occupying the engine-house so built, and was subsequently, at Christmas, 1877, and again in 1878, (date not fixed,) employed at fires, but at neither time did it render satisfactory service. The testimony of several experts, notably the chief of the Louisville fire department, has been given as to the value of such engines for the extinguishment of fires, and the defense has offered the opinions and experiences of several persons who are not experts on the same subject. No complaint appears to have been made by the city authorities of the inefficiency of the engine until payment was demanded of the notes; and the engine is now, and has been continuously since the purchase, in the possession and control of the city, without tender to plaintiff.

*Walker & Shelby* and *L. B. Thornton*, for plaintiff.

*Wm. Cooper* and *Ex-Gov. Lindsey*, for defendant.

PARDEE, J. The argument in this case has taken a wide range, —much wider than is necessary for the decision of this case. There can be no doubt at all, under the facts in this case, that the mayor and board of aldermen of the city of Tuscumbia purchased the engine, and incurred the several obligations to pay the same, for and on account of the city of Tuscumbia. They had the authority to make the purchase. *Mayor, etc., of Birmingham* v. *Rumsey*, 63 Ala. 353; 1 Dill. Mun. Corp. §§ 93, 94, pp. 210, 211. See Charter, Acts Ala. Sess. 1865–6, p. 191. As they had the authority to make the purchase, they, of course, had the authority to obtain terms and enter into the necessary contracts, provided they were not restricted in that behalf by their charter, which is not claimed in this case. See *Trustees* v. *Moody*, 62 Ala. 389.

The burden of proof is on the defense to show the want of consideration pleaded. This has not been shown; on the contrary, from the weight of evidence in the case, I am satisfied that the engine in controversy, when taken care of and handled by a capable person or persons, is a valuable machine, and can be of great assistance in the extinguishment of fires. These conclusions would seem to dispose of the case, but the counsel for the defense have strenuously and learnedly urged two propositions to defeat the plaintiff's demand

that I have no hesitation in passing upon. It is said that the acceptance of the contract by the mayor and board of aldermen cannot be shown save by the minutes in writing of the meeting at which the acceptance was ordered, and as such record shows no meeting, none can be proved.

In Dill. Mun. Corp. it is said:

"But a distinction has sometimes been drawn between evidence to contradict facts stated on the record and evidence to show facts omitted to be stated upon the record. Parol evidence of the latter kind is receivable unless the law expressly and imperatively requires all matter to appear of record, and makes the record the only evidence." See 1 Dill. Mun. Corp. § 237; *Bank, etc.,* v. *Dandridge,* 12 Wheat. 64.

"The rights of creditors or of third persons cannot be prejudiced by the neglect of the council to keep proper minutes, against the corporation. What the council in fact did may be shown by evidence *aliunde* the record kept by it." *Bigelow* v. *Perth Amboy,* 1 Dutch. 297; *San Antonio* v. *Lewis,* 9 Tex. 69; *Trustees* v. *Cagger,* 6 Barb. 576.

The case of *Perryman* v. *Greenville,* 51 Ala. 507, does not conflict with these propositions. The corporation in that case proved, by its record of proceedings, that a certain allowance claimed by the defendant, one of its officers, was not made by the council, and the supreme court held the records or minutes admissible, saying that they were the best and only evidence of the fact that such an allowance had or had not been made. My attention has been called to no Alabama case supporting the defendant's pretensions in this regard. The other proposition argued is that as Fitch, agent, paid the mayor $25 for circulating the petition for the purchase of an engine among the tax-payers, that it amounted to lobbying and corruption, so as to taint with illegality the contract of purchase; relying on *Trist* v. *Child,* 21 Wall. 441.

A sufficient answer to this is that no such defense is pleaded in the case; but I deem it proper to say that the evidence shows that the agreement to pay the mayor for circulating the petition was after the purchase had been practically agreed upon by the board of aldermen, and no intention to corrupt any one, and no actual corruption, appears or can be fairly inferred from all the facts in the case. On the whole case I am satisfied that plaintiff is entitled to judgment for the amount of notes sued on, principal and interest, and as a jury has been waived and the case submitted to the court, such judgment will be entered, with costs.