## DAWSON TOWN & GAS CO. v. WOODHULL.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1895.)

No. 509.

1. PROMISSORY NOTE—ACTION BY INDORSEE—EVIDENCE OF OWNERSHIP.

In an action on a promissory note by an indorsee, who has the note in his possession, it is not necessary for the plaintiff to offer testimony to establish his ownership of the note before reading it in evidence, though his ownership is denied in the answer.

2. EVIDENCE—ADMISSIONS—USING PART OF DEPOSITION.

The defendant in an action took the deposition of the plaintiff, and subsequently took that of the magistrate who took plaintiff's deposition, in order to prove, as admissions, certain statements made by plaintiff in giving his deposition. On the trial, defendant offered the deposition of the magistrate, which was excluded, and then read certain parts of plaintiff's deposition, whereupon plaintiff asked leave, and was allowed, to read the whole, plaintiff himself being present at the trial. *Held,* that both rulings were correct; that plaintiff was entitled to the same privilege as any witness,—of having all he had said on a given occasion, and on a given subject, read to the jury, if it was proposed to use his evidence as an admission.

3. SET-OFF—FAILURE OF CONSIDERATION—MISLEADING CHARGE.

In an action on promissory notes, in which the defendant set up misrepresentation and fraud in the sale of the property for which the notes were given, and claimed damages for a failure of consideration, the court charged that where there is a partial failure of consideration, or where the whole contract was the result of fraud, if the parties defrauded wish to avail themselves of the fact, they must repudiate the contract, and tender back what they have received, and, where they have not done so, they cannot repudiate their contract to pay. In a subsequent part of the charge, the court said that the foregoing instruction related to the case of a total failure, perhaps, of consideration, and that if the defrauded party kept the property, and there was a partial failure of consideration, the rule would be different and such failure might be set off against the notes; proceeding to refer to an alleged failure of the seller to deliver all that he had agreed to deliver, but saying nothing more about the alleged misrepresentation and fraud. *Held,* that the error in the former part of the charge, in stating that the defendant could not set off damages caused by misrepresentation and fraud, was not cured by the subsequent part of the charge, permitting him to set off the failure to deliver particular items of property, and that the charge was, at all events, contradictory, and liable to mislead the jury.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action by Curtis Woodhull against the Dawson Town & Gas Company on two promissory notes. The plaintiff recovered judgment in the circuit court. Defendant brings error. Reversed.

This was a suit which was brought in the circuit court of the United States in the district of Nebraska by Curtis Woodhull, the defendant in error, against the Dawson Town & Gas Company, the plaintiff in error, on two promissory notes, each for the sum of $6,244, which were executed by the Dawson Town & Gas Company in favor of J. T. Hoile, as payee, and were subsequently indorsed by him to said Woodhull. The defendant company pleaded, by way of defense, the following facts: That the notes did not belong to the plaintiff, Woodhull, but were in fact the property of Hoile, he having transferred them to Woodhull without consideration, and that Hoile and Woodhull had conspired to have the suit brought in Woodhull's name to cut off defenses which existed against Hoile, and rendered the notes non-

collectible in his hands; that the notes were executed and delivered in payment for certain lands in the state of Iowa belonging to the Perry Natural Gas Company, on which were located certain gas wells; that Hoile acted as agent for the sale of said property, and that, for the purpose of inducing a sale thereof to the defendant company, he made the following representations: That the Perry Natural Gas Company was owned in equal shares by him, the said Hoile, and certain other parties, and that he, the said Hoile, was authorized to transfer to the defendant the interests of each and all of said persons in the said Perry Natural Gas Company; that the said gas wells on the lands of the Perry Natural Gas Company had a continuous flow of gas; that the main gas well thereon would produce a flow of 4,000,000 feet of gas per day; and that the said gas wells produced gas at a pressure of about 125 pounds per square inch. The answer further averred that all of said representations so as aforesaid made were false, and were made by said Hoile with intent to defraud the defendant company; that the defendant company was deceived by said representations, and was thereby induced to purchase the land in question, and to deliver to said Hoile, in payment therefor, $30,000 of its capital stock, and the two notes in suit; that by reason of the fraudulent conduct of said Hoile the defendant had never received any consideration for the notes; and that, in consequence of said fraud, it had sustained damages in the sum of $25,000, for which it prayed judgment. The trial resulted in a verdict and judgment against the defendant company for the full amount of said notes, and accrued interest, to reverse which the defendant company has brought the case to this court by a writ of error.

John L. Webster, for plaintiff in error.

C. Frank Reavis and B. S. Baker (Isham Reavis, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first error that has been assigned for our consideration relates to the action of the trial court in permitting the notes in suit to be read in evidence without requiring the plaintiff to offer any evidence tending to show that he was the owner thereof. It is insisted in behalf of the plaintiff in error that inasmuch as it had denied the fact of ownership, and had alleged affirmatively that Woodhull had paid no consideration for the paper, and had conspired with Hoile to have the suit brought in his name, but for Hoile's benefit, the court should have required the plaintiff to furnish some proof of ownership before admitting them in evidence. We think that this assignment is untenable. The legal presumption of ownership which exists in favor of one who is ostensibly in possession of negotiable notes indorsed in blank by the payee, as these notes were, and who brings a suit thereon, is not overcome by a mere denial of the fact of ownership contained in the answer. When these notes were offered, they were in the hands of the plaintiff's attorneys. The legal presumption was that they had received them from the hands of their client, that they had ceased to belong to the payee, and that they were the client's property. There was no occasion, therefore, for offering testimony to confirm the presumption before the notes were admitted in evidence. Collins v. Gilbert, 94 U. S. 753, 754, and cases there cited; Brown v. Spofford, 95 U. S. 474, 478; Daniel, Neg. Inst. §§ 812, 574; Tied. Com. Paper, § 312.

It is further assigned for error—and these assignments may be considered together—that the court erred in permitting the deposition of Curtis Woodhull, the plaintiff, to be read in his own favor, he being present at the trial, and in refusing to allow the deposition of Thomas Cary Welch to be read in behalf of the defendant company. Both of these depositions appear to have been taken and filed as evidence in the case by the defendant. The plaintiff's deposition was first taken, but not desiring to use it after it had been obtained and filed, for fear, no doubt, that the defendant would be concluded by certain statements therein contained, counsel for the defendant company resorted to the novel expedient of securing the deposition of said Welch, who was the officer before whom the plaintiff's deposition had been reduced to writing, for the purpose of proving by him certain statements that had been made by the plaintiff in the course of his examination. On the trial of the case the deposition of Welch was first offered by the defendant, but the plaintiff interposed an objection to the reading of the same, and it was thereupon excluded by the court. The defendant then offered and read certain portions of the plaintiff's deposition, as admissions made by the plaintiff, whereupon the attorneys for the plaintiff asked and obtained leave to read the residue of the deposition, which had not been read by the defendant's attorney. We are unable to perceive any error in either of these rulings of the circuit court of which the defendant is justly entitled to complain. The object which counsel for the defendant company obviously had in view was to lay before the jury selected portions of the plaintiff's deposition, which the defendant had taken, and caused to be placed on file, without being put to the necessity of reading other parts of the deposition, which he deemed prejudicial to his client's interests. The testimony of Welch, so offered, was in the nature of secondary evidence of the contents of a written document which was then in the defendant's custody and control. Besides, it was manifestly unfair to the plaintiff to put him on the stand as a witness by means of compulsory process, and then call a third party to prove certain admissions which he may have made while testifying as a witness, without giving him the benefit of other statements contained in the deposition that may have tended to qualify and explain such admissions. When a party to a suit is called as a witness by the opposite party, he is entitled to all the privileges of a witness, and among these is the right to have all that he may have said on a given occasion, on a given subject, read to the jury, if his statements were reduced to writing, and it is proposed to use the writing against him as an admission. This is not only an elementary rule of evidence, but it is one that owes its origin to a sense of fair play and fair dealing.

Passing from these assignments of error, neither of which, in our judgment, is well founded, we have next to consider a more important exception, which was taken to the charge of the trial court. The issues raised by the pleadings as to the ownership of the notes, as to the fraud practiced by Hoile, the payee, and as to whether the defendant company had received any consideration for the paper, were submitted to the jury under instructions that seem to have been

applicable to the case, and that also appear to have been substantially accurate as declarations of law. The trial court then proceeded to consider the question whether, in the event of a partial failure of consideration, owing to the alleged fraud that had been practiced, the defendant company was entitled to recoup the damages it had sustained, and thereby lessen the amount of the recovery. With reference to this feature of the case, the circuit court, in its charge, used the following language:

"Now, where there is a partial failure of consideration, or where the whole contract was the result of fraud,—had its inception in fraud,—if the parties who were so defrauded wish to avail themselves of that fact, they must have repudiated the contract; they must disaffirm it, and tender back to the person the property they receive for the giving of the notes in question. They must, it seems to me, repudiate the entire transaction, and not hold on to the property they have received. That won't do. Was there any attempt—has there ever been an attempt—to repudiate the transaction, and to put the parties in statu quo; that is, to surrender the property to the Perry Natural Gas Company which they had received from it? If there was no such arrangement as that, then they are not in a position to repudiate it, because they can't keep the property they got, and refuse to pay for it, at the same time."

Then, after pointing out to the jury that there was testimony before them tending to show that the defendant company had received a conveyance from the Perry Natural Gas Company of land worth $12,500, subject to an incumbrance for only $5,000, and that the defendant had subsequently placed another mortgage on the property, and suffered it to be foreclosed, so that it could not in fact restore the consideration it had received for the notes in suit, the trial court continued its charge as follows:

"What I have said with reference to that relates to the transaction where there is a total failure, perhaps, of consideration; but where there is a partial failure of consideration, as it is possible there may be here, the rule would be different. If they did not repudiate the entire transaction, but kept the property they have received, and there is a partial failure of consideration, then that partial failure of consideration might be set off against these notes if the plaintiff had knowledge of the fact (that) such defense existed at the time he purchased the notes. What is the fact about that? You may believe or you may not believe from the testimony that the plaintiff was an innocent, bona fide purchaser before due and for a valuable consideration, and if you don't believe that, from the testimony, you have to fall back and see to what extent the consideration has failed—how far it has failed, if it has failed at all. * * * How much was the defendant injured in consequence of Hoile failing and neglecting to do precisely what he had agreed to do? One witness claims they had to pay six hundred dollars to a party or one of the stockholders in order to secure his interest—one stockholder in the Perry Natural Gas Company. * * * Then it is claimed the interest of Stout never has been secured. That Hoile was to do that before the notes were to be delivered. If that be so what is his interest worth? Of course, you don't know and you have to find out as best you can from the testimony. If there was an interest remaining in that land, 320 acres, and the gas wells upon it, what is his interest worth that has not already been obtained for the defendant? If it is worth anything, six hundred dollars or a thousand dollars or whatever it may be worth, then that would be a proper and valid set-off to the notes, because the defendant would be injured to that extent because Hoile failed to carry out his agreement according to these terms."

In the first paragraph of the above quoted excerpts from the charge, there is an unqualified statement to the effect that even

though the jury should find that the defendant company had been damaged to some extent by the fraudulent representations of Hoile, so that the consideration of the notes had partially failed, yet that the amount of such damages could not be allowed as an offset against the notes, because the defendant had not reconveyed, or offered to reconvey or restore, the property which it had received from the Perry Natural Gas Company. Clearly, this was not a correct statement of the law. The defendant had pleaded, by way of offset, that it had sustained damages, in a given sum, in consequence of the fraud alleged in its answer, and it was entitled to recoup the amount of such damages, if any, if the jury believed, and so found, that the plaintiff was not a bona fide holder of the notes, even though it was not in a position to restore all that it had received, and to demand a rescission of the agreement. We are not able to say that the error so committed was cured by what was said in the subsequent part of the charge. It is true "that the court did remark that what he had previously said related, perhaps, to a case of total failure of consideration"; but the context shows that in making that qualified statement the trial judge had in mind two items of damage which the evidence tended to show that the defendant had sustained in consequence of Hoile's failure to obtain, and to transfer to it, the interest of two shareholders in the Perry Natural Gas Company. It is manifest, we think, that, in making the qualified statement found in the second paragraph of the charge above quoted, the trial judge did not intend to instruct the jury that damages incident to the alleged fraud could be offset against the notes. On the contrary, the direction intended to be given was simply this: that, in so far as the evidence tended to show that the defendant company had not received all of the interests in the Perry Natural Gas Company that Hoile had contracted to sell and convey, there might be an allowance, by way of offset, for the amount that the defendant had actually expended to secure such outstanding interests. This, we think, was the most natural meaning of the charge, taken as a whole. But, if we are mistaken in this view, it is certainly true that the charge was contradictory in the respects above quoted, and for that reason was liable to confuse and mislead the jury. The circuit court appears to have entertained the opinion—in which we fully concur—that there was some evidence in the case which tended to show that Hoile had intentionally deceived the promoters of the defendant company by making the false representations alleged, and by resorting to artifice to conceal from them certain material facts, relative to the operation and flow of the gas wells, that were well known to him, but were unknown to the parties with whom he was dealing. There were also some facts in evidence from which, as we think, a jury would be authorized to infer that Woodhull was not an innocent purchaser for value of the notes in suit. Such being the state of the case as disclosed by the record, we feel constrained to hold that the error in the charge was of such nature as to necessitate a new trial. The judgment of the circuit court is accordingly reversed, and the case is remanded, with directions to award a new trial.