RONDOT v. ROGERS TP.

(Circuit Court of Appeals, Sixth Circuit. January 2, 1900.)

No. 699.

1. MUNICIPAL BONDS—OMISSION OF SEAL—EFFECT UNDER MICHIGAN STATUTE.
    Under How. Ann. St. Mich. § 7778, which provides that "no bond, deed of conveyance or other contract in writing signed by any party, his agent or attorney, shall be deemed invalid for want of a seal or scroll affixed thereto by such party," negotiable obligations issued by a township under

a statute authorizing the issuance of bonds, and which are denominated "bonds" on their face, may be treated in law as specialties, and an action of covenant maintained thereon, although they are not in fact sealed.

2. EVIDENCE—MUNICIPAL RECORDS.

Where the journal of a township board, which should contain the record of all township meetings and the meetings of the board, is shown to have been incomplete, records of such meetings contained in a highway commissioner's record kept by the same clerk, and certified by him to have been made from records and papers on file in his office, are admissible as prima facie evidence of the proceedings of such meetings, where no record thereof appears in the journal.

3. MUNICIPAL BONDS—DEFENSES—DEFECTIVE RECORDS.

The failure of the clerk of a municipal corporation to make a record of proceedings relating to the issuance of bonds cannot avail the corporation, to defeat the enforcement of such bonds, but parol evidence is admissible to supply the place of the missing parts of the record.

4. SAME—VOTE OF TOWNSHIP—MICHIGAN STATUTE.

Under Laws Mich. 1867, No. 98, which authorizes townships to raise money by tax for the purpose of building and repairing bridges, and also to borrow money on bonds issued for the same purpose, and provides that the question of exercising such authority shall be determined by vote at a township meeting, where a proposition to levy a tax and also one to issue bonds are submitted and voted on at the same meeting they are not necessarily alternative propositions; and, when it appears that such was the intention, both may legally be adopted at the same time.

5. FEDERAL COURTS—FOLLOWING STATE DECISIONS—ACTION ON MUNICIPAL BONDS.

A decision of the supreme court of a state holding invalid a township election authorizing the issuance of bonds, which was not made until after the bonds had been issued and sold, is not conclusive on a federal court in an action to recover on such bonds.

6. MUNICIPAL BONDS—ESTOPPEL BY RECITALS—IRREGULARITY IN ELECTION.

A township which issued negotiable bonds containing recitals that they were issued in conformity with an act of the legislature authorizing their issuance, and were authorized by the legal vote of the qualified electors of the township at a special meeting held upon a certain date, and which received and retained the proceeds of such bonds, and for a time paid the interest thereon, is estopped from asserting irregularities in the election or defects in the preliminary proceedings to defeat such bonds in the hands of a bona fide purchaser.

7. SAME—MANNER OF EXECUTION—RECITALS.

Where an act authorizing the issuance of township bonds vests the power to issue them, when the conditions precedent have been complied with, in the township board, but without specifying the manner of its exercise, they may direct the bonds to be executed and signed by appropriate officers of the township; and in such case recitals contained in the bonds are to be given as full effect as though made by the board itself.

8. SAME—BONA FIDE HOLDER—TRANSFER AFTER MATURITY.

The assignee of a bona fide purchaser of negotiable bonds before maturity takes the same rights his assignor had, whether the assignment was made before or after maturity, and it is immaterial whether he paid a consideration therefor.

9. SAME—EVIDENCE OF OWNERSHIP—PRESUMPTION FROM POSSESSION.

The production of negotiable bonds in suit by plaintiff's counsel on the trial raises a presumption that plaintiff is their owner.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This is a writ of error to review the judgment of the circuit court for the defendant, the township of Rogers, Presque Isle county, Mich., in a suit by Augustus E. Rondot upon 21 bonds purporting to be obligations of the town-

ship. The original declaration, filed April 18, 1891, termed by the pleader a "plea of the breach of covenant," counted on 10 bonds, of $100 each, dated June 20, 1871, and maturing July 1, 1881, with annual interest coupons unpaid since July 1, 1873; upon 5 more bonds for the same amount, each running for 10 years, (until December 1, 1881), with annual interest coupons unpaid since December 1, 1873; and upon 6 more bonds for the same amount, each due January 1, 1882, with unpaid interest coupons since January 1, 1873. A trial was had upon issues duly made upon this declaration, resulting in a verdict and judgment for the defendant. The judgment was brought here for review. This court found that the averments upon which jurisdiction was based were defective, reversed the judgment, and remanded the cause, with leave to the plaintiff for amendment and further proceedings. 25 C. C. A. 145, 79 Fed. 676. In the circuit court the plaintiff did amend his declaration so as to show jurisdiction, and also by terming his action "a plea of covenant," instead of "a plea of breach of covenant." In other respects the declaration is the same as the original. All the bonds sued on are in the form following:

"No. 21.                                                                   $100.
                    "Township Bond for One Hundred Dollars.

"Township of Rogers.                                     County of Presque Isle.

"Authorized by Act of the Legislature of Michigan Approved March 25th, 1867.

"Know all men by these presents, that the township of Rogers, county of Presque Isle, and state of Michigan, acknowledges itself justly indebted, and promises to pay, to ——— or bearer, one hundred dollars, on the first day of December, A. D. 1881, at the First National Bank of Detroit, with interest at the rate of ten per cent., payable annually, upon the presentation of the coupons hereto annexed, on the first day of December of each and every year, until the principal is paid.

"[Note. Written across the face in red ink] $100. State of (issue of $3,000) Michigan.

"This bond is issued in conformity with an act of the legislature of the state of Michigan approved March 25th, 1867, and authorized by a legal vote of the qualified voters of the township at a special meeting held August 23, A. D. 1871.

"In testimony whereof, the supervisor and treasurer have signed and counter-signed this bond this twenty-first day of November, A. D. 1871.
                                                    "Christian Bahre, Treasurer.
"Frederick Denny Larke, Supervisor.

                        "Ten-Dollar Coupon, Due 1881.

"Township of Rogers, county of Presque Isle, state of Michigan, will pay the bearer, at the First National Bank, Detroit, on the first day of December, 1881, being interest on bond No. 21.                     Christian Bahre, Treasurer.
"Frederick Denny Larke, Supervisor."

The bonds are not sealed. The bonds dated November 21, 1871, and January 1, 1872, bear the names of Christian Bahre, treasurer, and Frederick Denny Larke, supervisor, as above, and recite a township meeting of August 23, 1871. The 10 bonds issued June 30, 1871, bear the names of Christian Bahre, treasurer, and Albert Molito, supervisor, and are denominated, by words written across the face, "$1,000 issue." Their recitals refer to a township meeting held June 28, 1871, instead of August 23, 1871, but in all other respects the two series are alike.

The law under which the bonds purport to have been issued (being No. 98 of the Michigan Session Laws of 1867) is as follows:

"An act to authorize the several townships of this state to raise money by tax, or to borrow money, to rebuild or repair bridges.

"Section 1. The people of the state of Michigan enact, that it shall be lawful for any township in this state to vote for and raise by tax a sum not exceeding one per cent. of the assessed value of the real and personal estate for the preceding year, for the purpose of building and repairing bridges; and it shall be lawful for such townships to borrow money for such purposes upon the terms and conditions hereinafter mentioned: provided, the aggregate of such loans shall not exceed three per cent. of the amount of the assessed valuation of the

real and personal property. And further provided, that no larger sum than one per cent. on the valuation shall be raised in any one year to pay the interest or principal of such loans.

"Sec. 2. It shall be the duty of the township clerk, upon the written application of ten legal voters who are freeholders within such township, to give notice, by a written or printed notice, to be by him posted up in five of the most public places in said township at least two weeks previous to the annual township meeting, or of a special meeting, of the intention to vote, by ballot, on the tax or loan, in pursuance of the provisions of this act; and at such meeting the question shall be submitted to the voters, and the majority of the voters voting at such elections may determine as to raising a tax or making a loan, for the purposes in the first section of this act mentioned.

"Sec. 3. The bonds of the township may be issued by the township board upon such conditions, as to time of payment, but in no case to exceed ten years from date, as the legal voters may, by resolution, direct, but shall not be disposed of at a price less than their par value; said bonds to draw interest at a rate not exceeding ten per cent.

"Sec. 4. The money raised by tax, or borrowed upon loan, shall be expended on the bridges within such township, under the direction of the commissioner[s] of highways; but the legal voters of each township may, at the time of voting upon such tax or loan, designate any particular bridge or bridges upon which to expend such money so voted or loaned.

"Sec. 5. This act shall take immediate effect."

In order to show the proceedings preliminary to the issuing of the bonds, the plaintiff served notice upon the defendant to produce its records showing any action in respect to these bonds. In response to the notice, defendant produced two books. One was the journal of the township board. In this book appears the following in relation to the issue of $3,000 of bonds authorized by township meeting of August 23, 1871:

"Copy of Application of Ten or More Freeholders of the Township of Rogers, County of Presque Isle, Michigan.

"To the Township Board of the Township of Rogers, Greeting: We, the undersigned electors and freeholders of the township of Rogers, request herewith the township board of the township of Rogers to call a special meeting for the purpose of voting to levy a tax of one per centum on the assessed valuation of the real and personal estate of the township, and, further, to vote to raise the sum of three thousand dollars ($3,000) in bonds of the township of Rogers, bearing ten per centum annual interest, and running (10) ten years; said tax and loan being for the purpose of building bridges across several of the streams, water courses, and swamps within the limits of said township. And your petitioners, as in duty bound, will ever pray.

"C. A. Carpenter, Frederick Denny Larke, J. Paul Mayer, William Meredith, Nozaine Marte, Daniel Swantz, Charles Sammons, Charles Haywood, C. Pfannenschmidt, William Gillis, and numerous others not here recorded.

"Dated Rogers City this 7th day of August, 1871."

On page 45 is recorded a notice of a special township meeting called for August 23, 1871, as follows:

"Copy of Notice Posted in Five of the Most Conspicuous Places in the Township of Rogers.

"To the Qualified Electors of the Township of Rogers: Take notice. At the request of ten or more freeholders of the township of Rogers a special township meeting is hereby called to be held at the school house in the village of Rogers City on Wednesday, the twenty-third (23d) day of August, 1871, at nine o'clock in the forenoon, to submit for the approval or rejection by the voters of said township the question of levying a tax of one per centum on the assessed valuation of the real and personal estate of said township, and also to vote upon the question of raising three thousand dollars ($3,000) in bonds of the township of Rogers, running for the period of ten years, and bearing ten per cent. annual interest, for the purpose of building bridges across several of the streams, water courses, and swamps within the limits of said township; said tax and

loan being in accordance with an act passed by the legislature of this state, and approved March 25, 1867.

"Dated at Rogers City this 8th day of August, 1871.

"Fred Denny Larke, Town Clerk, Ad Interim."

On pages 46 and 47 are recorded the minutes of the special township meeting of August 23, 1871, which read as follows:

"At a special meeting held in accordance with notices previously posted according to law, and recorded herein, at the school house in the village of Rogers City, in the county of Presque Isle, Mich., on the (23d) twenty-third day of August, 1871, at 9 a. m., a ballot was cast to vote upon the propriety of raising a loan of $3,000, running for ten years, and bearing interest at 10 per cent. per annum, for the purpose of building bridges over the various water courses and swamps in the township of Rogers; also, upon the advisability of raising or levying a tax of one per centum upon the assessed valuation of the real and personal estate of the township of Rogers for the aforesaid end and purpose. Present, John Morrison, Charles Pfannenschmidt, and J. Paul Mayer, inspectors of election; Frederick Denny Larke, acting township clerk; and Wm. H. Buchner, clerk of the inspectors.

"Moved by Frederick Denny Larke, and seconded by John Morrison, that Charles Pfannenschmidt be appointed chairman of this meeting, and afterwards carried by acclamation. Voting commenced. Board adjourned at 12 noon, and reassembled at 1 p. m. At 3 p. m. notice was given that the polls would be closed at 4 p. m., at which time, the ballots having been canvassed and compared, the following result was obtained:

Total number of votes polled........................................ 45
For the loan....................................................... 45
For the tax........................................................ 45
Majority in favor of the loan...................................... 45
Majority in favor of the tax....................................... 45

"Inspectors of election: John Morrison, Charles Pfannenschmidt, J. Paul Mayer.

"Clerk to the board: Wm. H. Buchner.

"Acting town clerk: Frederick Denny Larke."

This is followed by the copy of an affidavit of one showing the posting of notices of this meeting in five conspicuous places in the township on the 8th of August, 1871, 15 days before the meeting. The journal covering the year 1871 contains no other reference to the proceedings taken to issue this series of bonds. It does not contain a record of any meeting of the township board held after the township meeting directing the issue of the bonds. The journal is incomplete. Blank spaces are left between entries, evidently to be filled in with minutes of meetings not recorded. Fred Denny Larke, who was township clerk for three or four months preceding September, 1871, when he became supervisor, was a witness, and testified that the journal does not contain a record of all the transactions of the township board. He was positive in his statement that at a meeting of the township board a resolution was passed authorizing him, as supervisor, and Bahre, as township treasurer, to execute the $3,000 issue of bridge bonds which they afterwards executed.

The other record book produced by the defendant bears on its title page the words "Highway Commissioners of the Township of Rogers." On its first page is the following statement:

"This book extended from June 25, 1870, and was carefully compiled from the original records and minutes of proceedings from said date up to the 9th day of October, 1871, by Rudolph Hintermeister, under my supervision. After said date this book has been the only record of proceedings.

"Albert Molitor,

"Town Clerk at the Time of Hintermeister's Compilation, and Whose Affidavit Appears Herein.

"[Signed]    Frederick Denny Larke,

"Supervisor of the Township of Rogers.

"Dated Rogers City, December 30, 1871."

The pages of this book to and including page 38 are in the same handwriting, and contain minutes of meetings of the highway commissioners, of the township meetings, and of the township board prior to October 9, 1871. On page 39 of said book is contained the following:

"I, Albert Molitor, township clerk of the township of Rogers, and clerk of the board of highway commissioners of said township, being duly sworn, deposes and says that all the foregoing contents of this book are fac similes and true copies of the records, minutes, and proceedings of said board of highway commissioners, which I collected from the books and papers on file, and caused to be collected together and transcribed into this one book.

"[Signed] Albert Molitor,

"Clerk of the Township of Rogers, and Clerk of the Board of Highway Commissioners.

"State of Michigan, County of Presque Isle—ss.: Subscribed and sworn to before me, a notary public in and for Alpena county, by the above-signed Albert Molitor, a person to me well known, this second day of January, 1872.

"Frederick Denny Larke,

"Notary Public, Alpena County, Michigan."

Larke testifies that the township clerk and officers were in doubt as to whether the records of the board and of the road commissioners should not be contained in the same book, and that confusion arose from this.

On pages 9 and 10 of the record is a "copy of application" of 12 or more citizens of the township of Rogers to the township board, requesting them to call a special town meeting:

"To the Township Board of the Township of Rogers, County of Presque Isle, Michigan: We, the undersigned, electors of the township of Rogers, request herewith the township board of the township of Rogers to call a special township meeting for the purpose of voting to raise the sum of one thousand dollars ($1,000) in bonds of the township of Rogers bearing 10 per centum interest annually, and running ten years, for the purpose of building bridges across several streams and water courses in the township of Rogers. And your petitioners, as in duty bound, will ever pray. [Then follow the names of 12 persons.]

"Entered by temporary town clerk. J. Paul Mayer."

On page 10 is a "copy of notice" posted in three of the most conspicuous places in the township of Rogers, county of Presque Isle, Michigan:

"At the request of twelve or more qualified electors of the township of Rogers, a special township meeting is hereby called, to be holden at the boarding house of Messrs. Rogers & Molitor, in the village of Rogers City, on Wednesday, the 28th day of June, A. D. 1871, at nine o'clock in the forenoon, to take into consideration the matter of raising the sum of one thousand dollars ($1,000) in bonds of the township of Rogers, running ten years, at 10 per centum interest, for the purpose of building bridges over and across the several streams and water courses in the township of Rogers. Said proposition to be voted upon by ballot.

"[Signed] Albert Molitor.

"Samuel Blake.

"William Meredith.

"Entered by township clerk ad interim. J. Paul Mayer."

On page 11 of the record is a "copy of affidavit":

"State of Michigan, County of Presque Isle—ss.: Henry Slack, constable for the township of Rogers, county of Presque Isle, state of Michigan, being duly sworn, deposes and says that, in pursuance of the order of the township board of the township of Rogers, he posted on the tenth day of June, A. D. 1871, in three of the most conspicuous places in the township of Rogers, three notices calling for a special meeting of the electors of the township of Rogers, in order to vote upon the matter of raising one thousand dollars ($1,000) in bonds of the township of Rogers, running ten years, and bearing ten per centum interest, to build bridges across several streams in the township of Rogers. Said special meeting to be holden in the village of Rogers City, county of

Presque Isle, Michigan, on Wednesday, the twenty-eighth day of June, A. D. 1871. And furthermore deponent sayeth not.
"[Signed]                                      Henry Slack."

"Sworn and subscribed before me, a notary public for the county of Presque Isle, Michigan, on this twenty-ninth day of June, 1871.
"[Signed]        Fred Denny Larke,
"Notary Public for Alpena Co., Mich.
"Fred Denny Larke,
"Town Clerk Ad Interim."

On page 12 of the record is a "copy of minutes of special township meeting for the township of Rogers" on occasion of voting on the raising of the $1,000 bridge bonds:
"June 28th, 1871, 9 a. m.

"This meeting was called to order by Fred Denny Larke, acting town clerk, President William Meredith, Samuel Blake, and Albert Molitor, commissioners on roads. Albert Molitor having occasion to leave the meeting, William Meredith took his place as chairman, and J. T. Bravant was appointed as one of the clerks of the meeting. Voting commenced at 10 a. m., and, as all present had cast their votes by 10:55 a. m., notice was given that at 11:15 a. m. the polls would be closed. This was accordingly done, and, the canvass of the ballots having been taken, the result was as follows:

Votes cast....................................................... 29
For the bonds.................................................... 29
Against the bonds................................................ 0
Majority in favor of the bonds................................... 29

"Inspectors of election: William Meredith, Samuel Blake, Albert Molitor, who had returned.                      Fred Denny Larke,
"Acting Town Clerk of the Township of Rogers."

There is no minute of a meeting of the township board to exercise the authority conferred and to issue the bonds. It appeared from the uncontradicted evidence that the signatures of the officers purporting to sign the bonds were genuine; that the persons so signing were, at the dates of signing, actually discharging, respectively, the duties of the offices indicated in the bonds; that the money paid for the bonds went into the township treasury, and was expended in the erection of township bridges; that the first two interest coupons attached to all the bonds were paid; that the bonds were bought and paid for by the People's Savings Bank of Detroit at their face value in 1872, before their maturity; and that the purchaser had no knowledge whatever of any infirmity in the proceedings resulting in their issue. The bonds were produced in court by plaintiff's counsel, but there was no other circumstance or evidence to show that plaintiff had acquired title to the bonds, or how he did so.

C. A. Lightner, for plaintiff in error.

Henry M. Duffield, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts as above). The first question for our consideration in this case was made by demurrer to the declaration on the ground that the cause of action was barred by the statute of limitations. The cause of action in this cause is conceded to have accrued more than 6 and less than 10 years before the issuing of summons. By the law of Michigan (How. Ann. St. § 8713), actions of debt on contracts not under seal and of assumpsit must be brought within 6 years next after the cause of action accrues. By section 8719, all personal actions on any contract not limited by previous sections must be brought within 10 years. This applies

to actions of covenant and to actions of debt on a sealed instrument. Stewart v. Sprague, 71 Mich. 50, 38 N. W. 673. By section 7778 it is provided that:

"In all cases arising upon contracts under seal or upon judgments when an action of covenant or debt may be maintained, an action of assumpsit may be brought and maintained, in the same manner, in all respects, as upon contracts without seal."

It follows from the foregoing sections that in Michigan an action of assumpsit on a sealed instrument is barred in 6 years, while an action of covenant on the same cause of action is not barred for 10 years; the form, and not the cause, of action fixing the bar. Stewart v. Sprague, 71 Mich. 50, 38 N. W. 673.

The present action is in covenant. If it is properly brought in this form, then the bar of the statute is avoided. It is contended, however, that covenant will not lie on an unsealed instrument, and the bonds here sued upon were not sealed. The statute under which the instruments purport to have been issued provides for the issuing of bonds. A bond is a deed whereby the obligor obliges himself, his heirs, executors, and administrators, to pay a certain sum of money to another at a day appointed. 1 Bl. Comm. 340. A deed is a writing sealed and delivered by the parties. 2 Bl. Comm. 295. The word "bond" imports a seal, and the word, when used in a statute authorizing the issue by a municipal corporation of written obligations negotiable in character, means specialties or writings under seal. Koshkonong v. Burton, 104 U. S. 668, 673, 26 L. Ed. 886. The officers issuing evidences of township indebtedness purporting to comply with the statute of 1867 must therefore be presumed to have intended to issue sealed instruments. They have not done so in this case. But section 7778 of Howell's Annotated Statutes of Michigan, part of which has already been quoted, provides further that no bond, deed of conveyance, or other contract in writing signed by any party, his agent or attorney, shall be deemed invalid for want of a seal or scroll affixed thereto by such party. In Jerome v. Ortman, 66 Mich. 668, 33 N. W. 759, it was held that an action of covenant in Michigan, as at common law, was an action upon a deed; that the purpose of the clause of section 7778, just quoted, was to permit parties intending to make a deed or specialty to have the writing signed by them, though without seal, treated in law as a deed or specialty; and therefore that covenant might be maintained thereon. See, also, McKinney v. Miller, 19 Mich. 142. We think the case at bar is within Jerome v. Ortman. The officers signing the instruments here in suit intended them to be bonds (i. e., deeds), for the statute so denominates the securities to be issued, and the instruments themselves bear the name "bond" on their face; and therefore they may be given effect as such, and will support an action of covenant. The circuit court was right in overruling the demurrer based on the statute of limitations.

The next questions arising in this case are those of evidence. The plaintiff's counsel served notice upon the defendant to produce the township records covering the periods when the bonds in this case purport to have been authorized and issued. Two books are produced, one purporting to be the journal of the township board, and

the other a record of the proceedings of the commissioner of highways. The journal of the township board is evidently a defective record, and fails to show all of the proceedings of the township board, and the minutes of certain of the township meetings. The record of the highway commissioner is made up under the supervision of the township clerk. In this book the clerk, who became clerk in September, 1871, certifies that the records preceding his signature and sworn certificate were carefully copied from papers and books on file in the office of the township clerk. Part of these records are, on their face, minutes of the proceedings of the township board and of township meetings. It was a palpable mistake to include them in the highway commissioner's record, but, as the clerk kept both records, it is easy to understand how, in the loose methods of keeping the books, the error occurred. In the absence of the originals, we think these sworn copies, authenticated by the clerk in whose custody the originals should have been, and produced by the township whose records they purport to be, are at least prima facie evidence of the facts they record. 1 Dill. Mun. Corp. § 304, and cases cited. They show on their face their incompleteness, and this is, moreover, directly testified to by Fred Denny Larke, who was during the year 1871 at one time town clerk, and at another, supervisor. In this condition of the record, it is permissible to supply the missing parts by parol evidence. It was the duty of the township clerk to keep the record of the proceedings of the township board, and also of the township meetings (How. Ann. St. §§ 739, 740, 748); but the law does not anywhere make the recording of the proceedings a condition precedent to their validity. It is well settled that, under such a statute, creditors of a corporation, private, municipal, or quasi municipal, cannot be defeated because of the neglect of their debtor's clerk properly to record the evidence of the orders and resolutions constituting the contract on the faith of which they have rendered service or advanced money to the corporation. Bank v. Dandridge, 12 Wheat. 64, 6 L. Ed. 552; Bridgford v. City of Tuscumbia (C. C.) 16 Fed. 910; School Dist. v. Clark, 90 Mich. 437, 51 N. W. 529; Taymouth Tp. v. Koehler, 35 Mich. 22; 1 Dill. Mun. Corp. § 300.

It is objected to the validity of the bonds issued by authority of the township meeting of August 23, 1871, that the meeting was a nullity, and that the vote was not a vote of the majority of the electors preset in favor of the issuing of bonds. It is said that the supreme court of Michigan, in Loomis v. Rogers Tp., 53 Mich. 135, 18 N. W. 596, so decided. From a careful examination of that case, we do not think that the consideration of the validity of the meeting or its effect was necessary to the decision. The proceeding there was in mandamus to compel the township board of Rogers to levy a tax to pay the relator's bonds, which, like those in suit, purported to have been authorized by the township meeting of August 23, 1871. The issues were framed and submitted to the jury, but they did not cover the issues made by the pleadings. The township had answered, averring, among other things, that it had not received any money for the bonds, and that the relator was not a bona fide holder of them, and had not paid value for them. The relator did not request the submission of

these issues to the jury, and the court held that the effect of his failure so to do was an admission of those averments of the answer. The court distinctly declined to pass on the validity of the bonds in the hands of a bona fide purchaser. The judge delivering the opinion did express the view that the meeting of August 23, 1871, was a nullity, because the vote was not solely for the issue of bonds, but was in favor of two contradictory propositions, to wit, the proposition to levy a tax, on the one hand, and to issue bonds, on the other, and that as 45 voted for the one, and 45 for the other, there was a tie vote, and neither proposition was carried. With deference to the learned judge, it seems to us that this construction of the action of the meeting cannot be supported. The notices for the meeting showed clearly that it was the intention of those calling the meeting that both a tax should be levied, and bonds should be issued for the same purpose, and this was undoubtedly the purpose of the electors who voted. The first section of the act gives the power to tax and power to issue bonds in the conjunctive, not in the alternative. There is nothing in the act anywhere which forbids a township to issue bonds in the same year in which a tax has been levied. The only limitation is the amount of tax in one year, or the total amount of bonds to be issued, and it is not claimed in this case that either limitation was exceeded. The second section provides what notice shall issue for township meetings, to authorize the exercise of powers conferred in the first section, and mentions the purpose to tax or to loan with the disjunctive, not to show that the powers were to be exercised alternatively, but by way of distributive reference to the two powers conferred in the first section. We find nothing in this to prevent the holding of two township meetings on successive days,—one to authorize a tax, and the other to authorize a loan; and, if so, there would seem to be no legal objection to the holding of a special meeting for both purposes. Even if the exact point were in judgment before the supreme court of Michigan, we should not be concluded by its decision in a case like this. The bonds were issued and bought by those through whom the complainant claims in 1872, and this decision was not rendered until 1884. In such a question the courts of the United States exercise an independent judgment. Pleasant Tp. v. Ætna Life Ins. Co., 138 U. S. 67, 11 Sup. Ct. 215, 34 L. Ed. 864; Folsom v. Ninety-Six Tp., 159 U. S. 611, 16 Sup. Ct. 174, 40 L. Ed. 278; Pana v. Bowler, 107 U. S. 541, 2 Sup. Ct. 704, 27 L. Ed. 424; Louisville Trust Co. v. City of Cincinnati, 47 U. S. App. 36, 22 C. C. A. 334, 76 Fed. 296. It certainly appears from these records that a majority of the voters in attendance at the township meetings called for the purpose approved the issue of the bonds sued upon.

Objection is made, however, that the meetings were not properly called, in several particulars. We do not think it necessary to consider the defects urged by counsel in respect either of the meeting of June 28, 1871, or that of August 23, 1871, for the reason that we think the township is estopped, as against a bona fide purchaser, by the recitals in the bonds, by its payments of interest coupons, and by its retention of the money paid in good faith for the bonds, to set up any defects in the steps preliminary to the issue of the bonds.

The bonds recite that they were issued in conformity with the special act of the legislature already referred to, and were authorized by the legal vote of the qualified voters of the township at a special meeting held upon a certain date. The special act requires that the bonds should be issued by the township board. The recital is in effect, therefore, that the bonds are issued by the board. There is direct evidence that the township board authorized the supervisor and treasurer, by resolution, to execute the bonds issued in accordance with the vote, and at the township meeting held August 23, 1871. This fact is further shown by the action of the board in paying the interest on the bonds for two years after their issue. There is no direct evidence of the passage of a resolution by the township board directing the execution of the bonds authorized by the meeting of June 28, 1871, but the action of the board in paying coupons upon these bonds certainly tends to show that they were executed by authority of the board. The law did not specify the manner in which the bonds should be executed, but left that to the board, who were directed to issue them. The board might act in issuing the bonds either by all of its members, or it might act in executing the bonds by one of its members, or by some township officer whose duties made it natural and proper for him to act in such a capacity. The supervisor who signed these bonds was the executive officer of the township. He was ex officio a member of the board, was the agent of the township upon whom all service of processes must be made, and, while not the president of the township board, was distinctively the general representative of the township in its dealings with others. The township treasurer was the financial officer of the township, whose duty it was to receive the proceeds of the bonds and to disburse them. If the fact was that the board directed the executive officers to sign the bonds on its behalf, and they did so, the binding effect of the bonds and their recitals on the township board is none the less because the agency of the supervisor and treasurer for the board is not as fully set forth as might be on the face of the bonds. In accepting the bond as the bond of the township board, whether signed by the officials under a fully-recited authority, or under one less elaborately set forth, the purchaser ran the risk of the actual existence of such authority. If the board had not directed their execution, the bonds were void, however fully the signing officers witnessed the fact. If it had directed the execution of them, then, so far as the board was concerned, it had given validity to them. Hence it follows that, if the fact be that the board directed the execution of the bonds as they were executed, the recitals on the face of the bonds are to be given as full effect as if made in terms by the board itself. The board under the special act was given authority to issue the bonds. It was its duty to order the special township meeting in accordance with the written application of the 10 legal voters who were freeholders within such township. It was therefore within its implied authority to pass upon the validity of such application. Before issuing the bonds, it must decide that the proper vote had been taken at the township meeting, upon a notice properly issued. As it was the tribunal to decide these questions, it necessarily had authority to recite its decision in the face of the

bonds. These conclusions bring this cause within the numerous cases in which municipal corporations having statutory power to issue bonds have been held estopped to deny the validity of bonds issued by them, by the recitals of the issuing officer or body in the face of the bonds that all the steps preliminary to the lawful issue of the bonds have been complied with. The scope of the recitals here is quite as wide as in a number of cases decided by the supreme court and by this court. Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Ashley v. Board, 16 U. S. App. 656, 8 C. C. A. 455, 60 Fed. 55; Risley v. Village of Howell, 12 C. C. A. 219–222, 64 Fed. 453; City of Cadillac v. Woonsocket Inst. for Savings, 16 U. S. App. 545, 7 C. C. A. 574, 58 Fed. 935.

There are other circumstances in this case, in addition to the recitals, which would support an estoppel. There are the receipt of the money, its use for the public purpose, and the payment of interest coupons for two years. Such circumstances, under the decision of the supreme court in the case of Supervisors v. Schenck, 5 Wall. 772–781, 18 L. Ed. 556, were held to estop the county from setting up the irregularity of the proceedings by which an election under the law authorizing the issue of bonds was held. See, also, State v. Trustees of Goshen Tp., 14 Ohio St. 569; State v. Van Horne, 7 Ohio St. 327; State v. Trustees of Union Tp., 8 Ohio St. 394.

But it is pressed upon the court that the plaintiff does not occupy the position of bona fide purchaser, because he became their owner after their maturity. It is conceded that the People's Savings Bank purchased these bonds before their maturity, and paid full value for them, without knowledge of any defect in the proceedings resulting in their issue, but the contention is that one who acquires negotiable paper after its maturity from one who bought it in good faith before its maturity may not enjoy the same immunity from equitable and other defenses as his transferror. This contention cannot be sustained. The assignee of a bona fide purchaser before maturity takes the same rights as his assignor had, no matter when the assignment was made. No cases have been cited which sustain the position assumed by counsel. Reliance is had upon general language applicable only to a purchase after maturity from an original party to the contract, or from one who is not a bona fide purchaser, and has no rights as such. The exact question was before the court in Cromwell v. Sac Co., 96 U. S. 58, 24 L. Ed. 681. See, also, Scotland Co. v. Hill, 132 U. S. 116, 117, 10 Sup. Ct. 26, 33 L. Ed. 261; Wood v. Starling, 48 Mich. 592, 12 N. W. 866. The plaintiff, by his counsel, produced the bonds, and thus arose the presumption that he was their owner. Dawson Town & Gas Co. v. Woodhull, 14 C. C. A. 464, 67 Fed. 451; Brigham v. Gurney, 1 Mich. 351. No evidence was introduced to show the contrary. The evidence conclusively showed that a prior owner had been a bona fide purchaser for value. The plaintiff, in becoming the owner of the bonds, acquired the benefit of the title of the intermediate bona fide purchaser, and it is immaterial how the title came to him,—whether by gift or otherwise.

These views lead to a reversal of the judgment for the township. The case should have been submitted to a jury on the issue whether

the township board did authorize the execution of the bonds as they were executed, and, if they found this to be the fact, with directions to return a verdict for the plaintiff; otherwise, to return a verdict for defendant. Judgment reversed, with costs, with instructions to order a new trial.