FAIRFIELD v. RURAL INDEPENDENT SCHOOL DIST. OF ALLISON
et al.

(Circuit Court, N. D. Iowa, W. D. November 8, 1901.)

1. SCHOOL DISTRICTS—SUBDIVISION—ACTION ON BONDS OF OLD DISTRICT.
    Where a school district has been subdivided into new districts under the statutes of Iowa, and subsequently an agreement is made by the new districts for the division and apportionment between them of the indebtedness of the old district, an action at law may be maintained

against them on bonds of the old district, and judgment rendered in conformity to such agreement.

**2. MUNICIPAL BONDS—RECITALS—LIMITATION OF INDEBTEDNESS.**

In view of the absolute limitation placed upon the indebtedness of municipalities by Const. Iowa, art. 11, § 3, which declares that no municipal corporation "shall be allowed" to contract debts beyond such limit "in any manner or for any purpose," which provision the legislature has no power to defeat or avoid by authorizing municipal boards or officers to make findings or recitals in bonds which shall be conclusive that they are within the limit, a purchaser of such bonds is not entitled to rely solely on a recital therein that the debt thereby created does not exceed the constitutional limit.[1]

**3. SAME—IOWA SCHOOL DISTRICTS—NOTICE TO PURCHASERS.**

A purchaser of bonds of an Iowa school district is chargeable with notice of the provision of the state constitution which prohibits the creation of debts by any municipal corporation in excess of 5 per cent. of the assessed value of the taxable property therein, and of the assessed value of the property of such district as shown by the public records, as well as of the authority possessed by the officers who execute the bonds; and where they recite that they are issued under the provision of an act of the legislature referred to, and of a resolution adopted by the board of directors in pursuance of such act, on a certain date, the purchaser is also charged with notice of the contents of the act and the resolution, and is not entitled to rely on general recitals that the resolution conforms to the act, and that the indebtedness created by the bonds is within the constitutional limit, where the resolution shows on its face that such recitals are untrue.

**4. SAME.**

Plaintiff was the owner of negotiable bonds issued by an Iowa school district, which recited that they were issued under the provision of Acts 18th Gen. Assem. c. 132, authorizing districts to issue bonds to refund their outstanding bonded indebtedness on the adoption of a resolution therefor by a three-fourths vote of the board of directors, and in pursuance of a resolution adopted on a certain date. The bonds also contained recitals that they were issued "in strict compliance with the laws of the state," and were within the constitutional limit of indebtedness. The resolution referred to, and under which they were issued, itself authorized the issuance of bonds to an amount several times greater than the amount of indebtedness the district could lawfully contract, and also showed on its face that the bonds to be thereby refunded were for a still larger amount. *Held*, that any purchaser of such bonds was charged with notice of such facts and of their invalidity, notwithstanding their recitals.

At Law. Action on school district bonds and coupons. Trial to the court.

**Findings of Fact.**

From the stipulation of the parties, the court finds the facts of this case to be as follows:

(1) The independent school district of Riverside, of Lyon county, Iowa, was organized in the year 1872, and continued its existence as such until the year 1885, when the territory comprising said district was divided into the independent school district of Allison and the independent school district of Jackson, which said districts are known as the "Rural Independent School District of Allison" and the "Rural Independent School District of Jackson," the same being school corporations under the laws of Iowa.

(2) The value of the taxable property, as is shown by the state and county tax lists of Lyon county, Iowa, within the said independent school district of Riverside, was for the years from 1872 to 1882, inclusive, as follows, to wit: For 1872, $43,995.32; for 1873, $68,317.01; for 1874, $68,890.83; for 1875,

---

[1] Constitutional and statutory limitations of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.

$70,435.64; for 1876, $70,706.96; for 1877, $57,247.58; for 1878, $72,175.97; for 1879, $47,220; for 1880, $44,571; for 1881, $44,033; for 1882, $49,170.

(3) As shown by the tax lists of Lyon county, Iowa, for the year 1880, there was a taxable value of $22,494 of property exempt from taxation in said independent school district of Riverside by reason and on account of the timber culture acts of the state, which said $22,494 is not included in the valuation for the year 1880 as given above.

(4) That the plaintiff herein is and was a resident and a citizen of the state, as alleged in the petition herein, at and before the commencement of this suit, and was and is now a citizen and resident of said state.

(5) That the plaintiff was a bona fide purchaser of the bonds in suit, in good faith, for value, and before maturity thereof, and without knowledge or notice of any defense whatever thereto, except that imported by the constitution and laws of Iowa, and was such owner and holder thereof, and coupons attached, at and before the commencement of this suit, and is now such owner and holder thereof.

(6) That the defendants and the independent school district of Riverside are and were at all times mentioned in petition in this case corporations as therein alleged, and the officers who signed said bonds were the duly elected and qualified officers of said Riverside district at the time said bonds and coupons were issued and delivered, and that said bonds were signed by the officers by whom they purport to be signed.

(7) That the bonds and coupons sued on are offered in evidence, and made a part of this stipulation and finding of facts.

(8) That the bonds in suit of dates June 21, 1881, November 5, 1881, and March 11, 1882, were the only bonds of said district of Riverside ever purchased or owned by this plaintiff of the issue of those dates.

(9) That the bonds in suit of June 21, 1881, purchased by the plaintiff, were issued, and formed part of a series from 1 to 40, inclusive, aggregating $23,700, issued in pursuance of a resolution adopted by the board of the independent school district of Riverside June 21, 1881, and recorded in the secretary's record, reading as follows:

"Riverside, Lyon Co., Iowa, June 21, 1881.

"Board of directors of the independent school district of Riverside met at the school district at call of the president. Members all present. The following resolution was passed: 'Whereas, E. E. Carpenter comes before the board with bonds of said district bearing 10 per cent. interest, and offers to surrender to said district, upon the issue and delivery to him new bonds of said district bearing 7 per cent.,—the old bonds being taken at 70 cents on the dollar,—bonds issued in the year 1873, or bonds issued in 1877 or later, at par, in exchange for new bonds of said district: Therefore it is resolved by this board that they issue the bonds of said district of Riverside, and said bonds shall be issued by the president and secretary and delivered to the treasurer to exchange as above stated. Said bonds shall number as follows: Bonds Nos. 1, 2, 3, 4, 5, 6, 7, 8, for one thousand dollars each; and bonds Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 39, for five hundred dollars each; and bond No. 40 for two hundred dollars,—and shall bear interest at 7 per cent., payable semiannually, on the first day of January and July of each year. The above-described bonds were issued and delivered to the treasurer for exchange. It is further resolved that the treasurer be authorized to exchange any bonds in his possession for old bonds of said district at 50 cents on the dollar, and be allowed 2 per cent. commission for refunding such bonds, as provided in the resolution of July 30, 1880.'

"Board adjourned at call of president.          G. W. Stoops, President.

"G. R. Matthews, Secretary."

(10) At and prior to June 21, 1881, November 5, 1881, and March 11, 1882, the independent school district of Riverside had outstanding against the district evidences of indebtedness largely in excess of 5 per cent. of the value of the taxable property within the limits of the district.

(11) During all the time from January 1, 1873, to March 11, 1882, the independent school district of Riverside had outstanding evidences of indebted-

ness against it, in judgments and bonds, largely in excess of 5 per cent. of the value of the taxable property within the limits of said district, as shown by the several state and county tax lists for each of the years during the said period.

(12) That the bonds in suit were not issued to refund, and did not refund, any judgment or judgment bonds issued by the independent school district of Riverside.

(13) That prior to June 21, 1881, judgments were rendered in various courts against the said independent school district of Riverside on evidences of indebtedness issued by said district prior thereto, which said judgments amounted to $6,500, and remained unpaid and unsatisfied at the date of the issuing of the bonds in suit.

(14) On November 5, 1881, the said independent school district of Riverside issued, for the purpose of settling old bonds, bonds Nos. 18 to 30, inclusive, aggregating $13,000.

(15) The bonds of March 11, 1882, purchased by plaintiff, formed part of a series numbered from 1 to 39, inclusive, issued to one C. W. Rollins in pursuance of a resolution adopted by the board of directors of the defendant district on the 11th day of March, 1882, and recorded in the secretary's record as follows:

"Riverside, March 11, 1882.

"Board of directors of independent district of Riverside, Lyon county, Iowa, met at the school house in said district on the 11th day of March, 1882. The following resolution was passed: 'Whereas, C. W. Rollins came before the board with a resolution to settle with the district some bonds of said district which he held, to the amount of $72,000.00, at 50 cents on the dollar, and take in exchange new bonds drawing 7 per cent. interest, not counting accrued interest: Now, therefore, it is resolved by the board that they issue bonds to the amount of $36,000.00, and exchange the same with the aforesaid C. W. Rollins, and also to allow the treasurer 2 per cent. for exchanging as provided in resolutions of June 30, 1880. Therefore the secretary and president are authorized and directed to turn over to the treasurer, and take his receipt for the same, said bonds, to be numbered as follows: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, $1,000 each; 25, 26, 27, 28, $500; 29, 30, 31, 32, $1,000 each; 33, 34, $500 each; 35, 36, 37, 38, 39, $1,000 each.'

"There being no further business, adjourned subject to the call of the chairman."

(16) That the secretary's record of the independent school district of Riverside shows the resolutions upon which issued, and the date and amounts of the bonds issued, from the year 1877 up to March 11, 1882, as follows:

| | | | | | |
|---|---|---|---|---|---|
| July | 12, 1877. | Refunding bonds | | $ | 5,000 |
| Dec. | 15, 1877. | " | " | | 6,000 |
| July | 1, 1878. | " | " | | 8,300 |
| July | 16, 1878. | " | " | | 800 |
| Dec. | 19, 1878. | " | " | | 1,600 |
| June | 21, 1879. | " | " | | 500 |
| July | 15, 1879. | " | " | | 3,200 |
| Sept. | 11, 1879. | " | " | | 1,600 |
| Oct. | 15, 1879. | " | " | | 5,200 |
| July | 10, 1880. | " | " | | 3,300 |
| July | 3, 1880. | " | " | | 5,000 |
| June | 10, 1880. | " | " | | 10,000 |
| July | 30, 1880. | " | " | | 4,500 |
| Dec. | 4, 1880. | " | " | | 10,500 |
| April | 6, 1881. | " | " | | 1,700 |
| June | 21, 1881. | " | " | | 23,700 |
| Nov. | 5, 1881. | " | " | | 13,000 |
| Feb. | 15, 1882. | " | " | | 20,500 |
| March | 11, 1882. | " | " | | 36,000 |
| | Total | | | | $160,400 |

(17) Subsequent to the organization of the independent school districts of Allison and Jackson, which by operation of law afterwards became the districts defendant, the said districts of Allison and Jackson made a division of the outstanding liabilities of the old district, by which it was agreed that two-thirds of the same should be paid by the said Allison district, and one-third by said Jackson district, and all of the judgments outstanding against the said old district, and all of the bonds upon which judgments have been heretofore rendered, and all other recognized liabilities of said district of Riverside, have been settled by the said districts in the above proportion.

(18) That, in the agreement between the said districts as to liabilities, no account was taken of the outstanding bonded indebtedness of the old independent district of Riverside, and neither of the said districts ever, by any contract or agreement, assumed or agreed to pay any part of the same, regarding and treating the said bonded indebtedness as void.

(19) That the assessed valuation of the said independent district of Riverside for the year 1883 was the sum of $98,168, and for the year 1884 $97,575, which was the last valuation of the old independent district of Riverside.

(20) That the assessed valuation of the rural independent district of Allison for the year 1885 was the sum of $72,973, and the valuation for the same year for the independent district of Jackson was the sum of $31,431.

(21) That the assessed valuation for the independent district of Allison for the year 1899 was the sum of $141,510, and for the independent district of Jackson for the same year the sum of $81,788.

(22) That the assessed valuation for the independent district of Allison for the year 1900 was the sum of $146,086, and for the independent district of Jackson for the same year was the sum of $83,603.

(23) That the assessed valuation of the independent district of Allison for the year 1901 is the sum of $149,699, and for the independent district of Jackson for the same year $82,479.

(24) That in addition to the judgments rendered against the said independent district of Riverside, as set out in the stipulation heretofore introduced in evidence, there were rendered in the district court of Lyon county, Iowa, prior to the division of the said independent district, judgments amounting to $3,887.94, and which said judgments were outstanding at the time of the division, and which said judgments have since been satisfied and paid off by said two new districts in the proportion of two-thirds by the said Allison district, and one-third by the said Jackson district.

(25) That there were issued by the old independent school district of Riverside $1,500 in judgment bonds, which said bonds were outstanding at the time of the said division, and upon which said bonds judgments have been rendered in the district court of Lyon county, Iowa, after defense made by the said districts, in the sum of $4,477.62 against the two independent districts defendant; the said judgments being divided and paid by the said districts in the proportion of two-thirds by the said Allison district and one-third by the said Jackson district; the said judgments being rendered by the court, two-thirds against the said Allison district, and one-third against the said Jackson district.

(26) That prior to the division of the old independent district of Riverside into the two defendant districts, in the year 1885, there had been erected in the old independent district of Riverside only two school houses, the valuation of which was not to exceed $1,500.

(27) That there are now pending in this court other suits against the defendant districts, based on bonds issued by the independent school district of Riverside, aggregating $30,000 in amount.

Parsons & Riniker, for plaintiff.
O. J. Taylor, for defendants.

SHIRAS, District Judge (after stating the facts). When this case was first submitted to the court it was held that it would be necessary to proceed in equity, in that it did not appear that there had been a division or apportionment of the indebtedness of the original

independent district of Riverside between the present defendants, which are rural independent school districts carved out of the territory embraced within the original district. Upon the filing of the opinion to that effect, leave was asked and granted to amend the petition, and to introduce evidence showing that in fact the defendant districts had made a division and apportionment of the indebtedness of the original district of Riverside; and it is now shown that subsequent to the organization of the defendant districts a division of liabilities was reached, whereby it was agreed that two-thirds thereof should be assumed by the rural independent district of Allison, and one-third by that of Jackson, and it now appears that the questions at issue can be disposed of in the present action at law. The defense interposed to a recovery on the bonds sued on is that when the same were issued the indebtedness of the independent district of Riverside exceeded the limitation imposed by section 3, art. 11, of the constitution of Iowa, upon the amount of indebtedness lawfully creatable by municipalities within the state; the limit being the amount represented by 5 per cent. of the taxable property within the municipality, as shown by the last-preceding state and county tax lists. The evidence shows beyond question that, when the bonds sued on were issued by the district of Riverside, the indebtedness of the district largely exceeded the constitutional limit; and it is equally plain that the enforcement thereof against the present districts will impose a burden on the property now within the districts in excess of the 5 per cent. limit. If it is open to the defendant districts to prove and rely upon the facts as they are and were when the bonds sued on were issued, then it is clear that the defense based upon the constitutional limitation of indebtedness is made out; for it is an admitted fact that when the bonds sued on were issued the limit of indebtedness had been largely exceeded by the independent district of Riverside. The highest valuation of taxable property within the district of Riverside during its existence was that returned for the year 1878 in the sum of $72,175.97, 5 per cent. of which is $3,608.79; and yet it is shown that between July 11, 1877, and March 12, 1882, there were issued in the name of the district bonds to the amount of $160,400, or more than double the valuation of the property within the district; and the fraudulent character of the bonds in suit is shown by the fact that those issued under the date of June 21, 1881, form part of one issue of $23,700, and those issued under date of March 11, 1882, form part of one issue of $36,000 and the only property possessed by the district, when it ceased to exist, as a result of this exceeding industry in the issuance of bonds, was two school houses, of a value not exceeding $1,500.

On part of plaintiff it is contended that the defense relied on is not available to the defendant districts, by reason of the recital found in the bonds to the effect that "this bond is issued in strict compliance with the laws of the state of Iowa, and is within the constitutional limit of indebtedness fixed by sec. three (3), art. 11 (eleven), of the state constitution"; it being claimed that this recital brings the case within the rule announced by the supreme court in Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040, and

Commissioners of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689, wherein it was held that the bond purchaser might rely upon the recital in the bond to the effect that the total issue did not exceed the limit fixed by the constitution of the state of Colorado.  These decisions are based upon the construction given to the statute of Colorado which provides for the submission to the electors of the county the question of the issuance of bonds to take up outstanding warrants; it being enacted that, in case the electors vote in favor of the proposition, the board of commissioners may issue the same, in the form to be prescribed by the commissioners, and it being further declared:

"The whole amount of bonds issued under this act shall not exceed the sum of the county indebtedness at the date of the first publication of the aforementioned notice, and the amount shall be determined by the county commissioners, and a certificate made of the same, and made part of the records of the county; and any bond issued in excess of said sum shall be null and void; and all bonds issued under the provisions of this act shall be registered in the office of the state auditor, to whom a fee of ten cents shall be paid for recording each bond." Sess. Laws Colo. 1881, p. 87.

In construing this statute the supreme court, in Chaffee Co. v. Potter, supra, held that:

"The statute, in terms, gave to the commissioners the determination of a fact,—that is, whether the issue of bonds was in accordance with the constitution of the state and the statute under which they were issued,—and required them to spread a certificate of that determination upon the records of the county.  The recital in the bond to the effect that such determination has been made, and that the constitutional limitation had not been exceeded in the issue of the bonds, taken in connection with the fact that the bonds themselves did not show such recital to be untrue, under the law, estops the county from saying it is untrue."

The bonds sued on were issued under the authority conferred upon school districts to issue refunding bonds by chapter 132, Acts 18th Gen. Assem. Iowa, which enacts—

"That any independent school district or district township, now or hereafter having a bonded indebtedness outstanding, is hereby authorized to issue negotiable bonds at any rate of interest not exceeding seven per cent. per annum, payable semiannually, for the purpose of funding said indebtedness; said bonds to be issued upon a resolution of the board of directors of said district: provided, that said resolution shall not be valid unless adopted by a two thirds vote of said directors."

In the second section of the act it is provided that the treasurer of the district is authorized to sell the bonds at not less than par, and to apply the proceeds to the payment of outstanding bonds, or he may exchange such bonds for outstanding bonds, par for par. The facts stipulated by the parties show that the bonds of the date of June 21, 1881, were issued to E. E. Carpenter in exchange for bonds of the district then held by him in an amount greatly in excess of the constitutional limit.  It cannot be gainsaid that there is great force in the contention of counsel for plaintiff that there is great similarity in the substance of the powers conferred upon the county commissioners under the Colorado statute and those conferred upon the school directors by the statutes of Iowa, and therefore that the same force and effect should be given to the recital in the bonds sued on as was given to the recital in the bonds sued on in the Colorado

case. There are, however, differences in the provisions of the statute in question. In that of Colorado the initiation of the proceedings authorizing the issuance of bonds is with the people of the county; it being provided that, upon petition of 50 of the electors, the county commissioners shall publish a notice requesting the holders of warrants to submit a proposition for the exchange of the warrants for bonds, and, if a proposition is submitted, then the question of issuance of bonds is to be submitted to the electors of the county, and, if the proposition carries, then the commissioners must determine the amount of bonds to be issued, making a certificate thereof, and the bonds issued must be registered in the office of the state auditor. By this act the commissioners are made a board with special authority to supervise the proceedings connected with the submission of the question to the people of the county, and with express authority to determine and certify the amount of bonds to be issued. In the case of school districts in Iowa no such extensive powers and duties are imposed upon the directors by the provisions of chapter 132, Acts 18th Gen. Assem. That act simply confers on school districts the power to issue refunding bonds provided the resolution to that end is approved by three-fourths of the directors. If it be held that the recital in the bonds sued on estops the district from showing that the bonds are void, because they exceed the constitutional limit, then it follows that the constitutional provision is practically rendered valueless, in that 'it is declared that the officers whose power and authority were intended to be limited by the provision can avoid its effect by the easy expedient of reciting in the bonds that they do not exceed the limit. It is contended that the protection of the people lies in their power to elect strictly honest officials, but it must be admitted that this is not within the absolute power of the people. When the constitution of the state was adopted, many provisions were inserted therein for the protection of the people against the unlimited abuse of official power; and among others is the limitation on the creation of municipal indebtedness, and this limitation is couched in the strongest terms; and, as is said by the supreme court in Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044:

"The scope and meaning of this provision of the fundamental and paramount law of the state are clear and unmistakable. No municipal corporation 'shall be allowed' to contract debts beyond the constitutional limit. When that limit has been reached, no debt can be contracted 'in any manner or for any purpose.' * * * The prohibition is addressed to the legislature, as well as to all municipal boards and officers, and to the people, and forbids any and all of them to create or to give binding force to any debts of the corporation in excess of the limit prescribed. * * * The power of the legislature in this respect being restricted and controlled by the constitution, any statute which purports to authorize a municipal corporation to contract debts in any manner or for any purpose whatever in excess of that limit is to that extent unconstitutional and void."

Under this construction of the constitutional provision, it cannot be held that it is within the power of the legislature of Iowa to declare that the inhibition of the constitution cannot be availed of to defeat bonds issued by school districts which contain the recital that

they do not in fact exceed the limitation.   In other words, it is not within the power of the legislature to declare that a mere recital in the bond shall defeat or avoid the constitutional provision.   In view of the stringent restrictive force of the limitation on the creation of municipal indebtedness contained in the constitution of Iowa, it cannot be broadly held that a purchaser of a school district bond is authorized to rely solely upon a recital therein found that the debt created by the bond does not exceed the limit.   He should be held to the inquiry of the source and extent of the authority possessed by the officials executing the bond, especially when the bond itself, as in this case, points out the means by which the would-be purchaser can ascertain whether he can rightfully rely upon the recitals of the bonds or not.   It is settled by the decisions of the supreme court that, regardless of the recitals in the bonds, the purchaser is bound to take notice of the constitutional provision, and of the amount of the taxable property within the municipality.   Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065; Commissioners of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689.   Under this rule, when bonds issued by a municipality created under the laws of Iowa are offered for sale, the purchaser is bound to take notice of the limit of indebtedness, and he is bound to take notice of the authority possessed by the officials executing the bond.   In this case the bond, on its face, recites that it is issued under the provisions of chapter 132, Acts 18th Gen. Assem. Iowa; the act being printed in full upon the back of the bond. In terms, it authorizes a school district to issue refunding bonds upon the adoption of a resolution by the board of directors, three-fourths of the directors voting therefor.   The bond further recites on its face that it is issued in conformity with a resolution of the board of directors at a meeting thereof held June 21, 1881.   This resolution thus referred to shows on its face that the issue of bonds therein provided for is in an amount largely in excess of the constitutional limit, as it directs the issuance of 8 bonds for $1,000 each, 31 bonds for $500 each, and 1 for $200, or in all $23,700, thus providing for an issuance at one time of an amount of bonds equal to the value of one-half of the taxable property in the district.   Is it open to the plaintiff to say that she was not bound to take notice of the provisions of the resolution of the board of directors, which is referred to on the face of the bonds, and which in fact she must rely upon in connection with the provisions of chapter 132, Acts 18th Gen. Assem. Iowa, as the source of the authority of the district to issue bonds in any amount?   If she was bound to take notice of the resolution, then she had notice of the fact that the series of bonds, which included those purchased by her, issued under that resolution, greatly exceeded the constitutional limit, and further that the bonds proposed to be refunded and held by E. E. Carpenter were largely in excess of the limit allowed by the constitution; and thus she was chargeable with full knowledge of the facts showing that the recital in the bonds that the issuance thereof would not exceed the limit was false.   It certainly is the law that a purchaser of a municipal bond is bound to take notice of the matters recited in and appearing upon

the face of the bond, and, when a bond expressly declares that it is issued under the authority of a named resolution of the municipal officials, this reference makes the resolution a part of the bond, in such sense that the purchaser is bound to take notice of its provisions. Under the decisions of the supreme court, the purchaser may rely upon the recitals in the bond to the effect that the officials have followed or performed the acts by them required to be done by the state statute or resolution of the board; but a recital to the effect that the bond is issued in conformity with a resolution of the directors adopted at a given date is not a recital of the terms of the resolution, but is only a statement that the provisions of the resolution have been followed or carried out. For knowledge of the provisions of the resolution, reference must be made to the resolution itself. Thus the recital found in the bonds in suit, to wit, that the same were issued in conformity with a resolution of the board of directors passed June 21, 1881, authorized the plaintiff to assume that all the provisions and requirements of the resolution had been observed; but the provision of the resolution was that bonds should be issued in the sum of $23,700, and therefore in this view there is no escape from the conclusion that the plaintiff was charged by the terms of the bonds with notice that the issue of which they formed part were in excess of the legal limit. To avoid this result it must be held that, although the bond on its face cited the act of the legislature and the resolution of the board which were relied on for the authority to issue the bonds, nevertheless the purchaser is not required to know or to take notice of the terms and conditions therein contained. If this is the rule, then if the legislature of the state should pass an act authorizing the counties of the state to issue bonds to an amount equal to 50 per cent. of the taxable property within the county, and such bonds should be issued, containing a recital that the bonds were issued in pursuance of and in conformity with the act of the legislature, persons would be protected in purchasing the same, on the theory that they were not chargeable with knowledge of the terms and provisions of the act which authorized their issuance. Due force and effect can be given to recitals such as are found in the bonds in suit without going to the extreme length of holding that by reason thereof a purchaser of the bonds is not to be held chargeable with notice of the terms and conditions contained in the resolution of the board of directors; the adoption of a resolution by the board being a necessary step, under the law, in the creation of the right to issue bonds.

The conclusion reached is that the plaintiff, when she bought the bonds in suit, was bound to take notice of the provisions of chapter 132, Acts 18th Gen. Assem., and of the resolution of the board of directors adopted June 21, 1881, both of which are cited and referred to on the face of the bonds as the sources of authority for the issuance thereof; that the resolution thus brought to the notice of the plaintiff charged her with knowledge of the fact that the series of bonds of which those purchased formed part, and which were directed to be issued by the resolution of June 21, 1881, amounting to $23,700, were so issued for the purpose of being exchanged for

bonds of an equal or greater amount held by E. E. Carpenter; that the plaintiff was thus charged with knowledge of the fact that Carpenter was holding bonds in an amount greatly in excess of the constitutional limit, and that the exchange proposed by the resolution of June 21st would not impart validity to the bonds then issued, if the bonds for which they were exchanged were themselves void by reason of the constitutional limit; and that the recitals in the bonds sued on are not of such a character as to enable the plaintiff to escape from the consequences of the knowledge chargeable to her by the matters recited in the bonds themselves. Being chargeable with knowledge of the terms of the resolution of June 21, 1881, the plaintiff knew that the issuance of the bonds directed by that resolution in fact violated the constitutional limit, and the plaintiff cannot, therefore, estop the defendant districts from proving the actual truth of the situation, to wit, that the series of bonds directed to be issued, and in fact issued, under the authority of the resolution of June 21st, were greatly in excess of the limit, and are therefore void if viewed as an original issue, and are equally void viewed as refunding bonds, because exchanged for bonds which in themselves exceeded the limit, and which are not shown to have been enforceable against the district when they were exchanged.

Judgment will therefore be entered for the defendants.