## TOWN OF NEWBERN et al. v. NATIONAL BANK OF BARNESVILLE, OHIO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1916.)

No. 2707.

1. COURTS ☞372(7)—PRECEDENCE—FEDERAL COURTS.
   Where the validity of municipal bonds depended upon the construction to be given Acts Tenn. 1897, c. 13, and Acts Tenn. 1901, c. 450, incorporating the municipality, and the contract had been entered into before an interpretation of the statutes by the Tennessee court, the federal courts are not bound by a decision of the Tennessee court holding the bond issue invalid, and, having obtained jurisdiction of a suit involving the validity of some of the bonds, they may exercise an independent judgment.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 979; Dec. Dig. ☞372(7).]

2. COURTS ☞372(7)—PRECEDENCE—FEDERAL COURTS.
   Upon questions of general law decisions of the state courts are not binding on the federal courts sitting within their borders; therefore a decision of the state court that a municipality was not estopped from denying the validity of its bonds, which had passed into the hands of a bona fide purchaser for value without notice, is not binding on the federal courts.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 979; Dec. Dig. ☞372(7).]

3. MUNICIPAL CORPORATIONS ☞927—BONDS—VALIDITY.
   Where municipal bonds bore admittedly official signatures of municipal officers and the city seal, such signatures and seal prima facie established the validity of the bonds.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1940; Dec. Dig. ☞927.]

4. MUNICIPAL CORPORATIONS ☞948(4)—BONDS—BONA FIDE PURCHASER—ESTOPPEL.
   Acts Tenn. 1897, c. 13, declares that, to secure pure elections, boards of commissioners shall be appointed in the several counties. Acts Tenn. 1901, c. 450, incorporating the town of Newbern, provides in section 6 for the holding of an election by the sheriff for the selection of mayor, aldermen, recorder, and marshal. By Act of March 13, 1907 (Acts 1907, c. 117), the mayor and aldermen of the town of Newbern were authorized to issue bonds to erect school buildings, to improve and extend the water and light system, and to improve streets. The bonds contained a recital that at an election duly and legally held by order of the mayor and aldermen of the town, in accordance with an ordinance duly passed, the issuance of the bonds was ratified by a majority of the voters. The bonds were signed by the mayor and countersigned by the clerk of the board of aldermen, instead of being signed both by the mayor and aldermen. The ordinance referred to in the bond recited that an election, ordered by the mayor and aldermen to ascertain the will of the qualified voters as to whether the mayor and aldermen should issue the bonds, as provided for, was held, and resulted in showing that a majority favored the issuance of the bonds; the result of the election having been duly and regularly certified by the sheriff under whose supervision the election was held. *Held* that, as against a bona fide purchaser of the bonds for value and without notice, the city was estopped to deny the validity of the bonds on the ground that the election, having been held by the sheriff, instead of commissioners, was invalid, for a purchaser could not be charged with notice of the fact that the election was held by the sheriff, on the ground that the bonds were signed by the mayor and clerk, instead of the mayor and

aldermen; these signatures being accompanied by a corporate seal importing authority.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1985; Dec. Dig. ☞948(4).]

5. MUNICIPAL CORPORATIONS ☞931—BONDS—VALIDITY—ALTERATIONS.
Municipal bonds are not invalid, on the ground that they did not follow the form prescribed by the ordinance, because of the insertion of provision for payment in a particular bank in the city, where payment was provided for, or by declarations that the total debt of the town, including the bonds, did not exceed any limit of indebtedness prescribed by the laws of the state, and that provision for the levy of an annual tax sufficient to pay the principal and interest of the bonds had been made and would be duly levied upon all taxable property, for the first provision operated to the convenience of the municipality, and the latter did not change the obligation of the municipality, which pledged its full faith, credit, and revenues.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1944–1947; Dec. Dig. ☞931.]

6. MUNICIPAL CORPORATIONS ☞948(5)—BONDS—VALIDITY—DEFENSES.
Where coupon bonds issued by a municipality to erect a school building were sold, and the purchaser disposed of them to bona fide purchasers,. but never paid the purchase price to the municipality, the bonds are, in the hands of bona fide purchasers, valid, being negotiable instruments.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1986, 1987; Dec. Dig. ☞948(5).]

7. MUNICIPAL CORPORATIONS ☞948(1)—BONDS—DELIVERY—PRESUMPTIONS.
Under Negotiable Instruments Act (Acts Tenn. 1899, c. 94) § 16, providing that, where a negotiable instrument is in the hands of a holder in due course, a valid delivery by all parties prior to him, so as to make them liable to him, is conclusively presumed, the validity of municipal school bonds in the hands of a bona fide purchaser cannot be questioned by a municipality on the ground that there was no valid delivery to the one through whom the purchaser traced his title.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1982, 1990; Dec. Dig. ☞948(1).]

8. APPEAL AND ERROR ☞1078(1)—REVIEW—WAIVER OF ERRORS.
Failure to argue assignments of error operates as a waiver.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4256; Dec. Dig. ☞1078(1).]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by the National Bank of Barnesville, Ohio, against the Town of Newbern and the Mayor and Aldermen of Newbern, Dyer County, Tennessee. There was a judgment for plaintiff, and defendants bring error. Affirmed.

The suit below was to recover judgment for interest alleged to have accrued on certain bonds of the town of Newbern, a municipal corporation located in Dyer county, Tenn. The town was empowered in 1907 to issue $50,-000 of coupon bonds for municipal improvements, as follows: $25,000 par value to erect and furnish school buildings, $10,000 to improve and extend water and light system, and $15,000 to improve streets. The bonds are all outstanding, and the town received the money arising from the sale of the water and light and street bonds, though it has received no money for the school bonds. The town pays the interest as it accrues on the water, light, and street bonds, but it declines to pay anything on account of school bonds. The interest now sought to be recovered is represented by 131 past-due cou-

pons, for $30 each, which have been cut from certain of the school bonds. The declaration sets out the statute investing the town with power to issue the bonds, alleges the steps taken, including the adoption of certain ordinances, by the town, and also the vote of a majority of the qualified voters of the town, authorizing the issue and sale of the bonds, plaintiff's possession as bona fide owner and holder for value of the coupons sued on, which are specifically described by their numbers and by the numbers of the bonds from which they were detached, and prays judgment upon such coupons with interest from their respective dates of maturity. To this declaration the defendants interpose three pleas: (1) That they did not "promise, undertake or agree in the manner and form as the plaintiff in its declaration has complained"; (2) that they do not "owe the said sums of money demanded, or any part thereof, in manner and form as the plaintiff in its declaration has complained"; (3) that the coupons and writings obligatory mentioned in the declaration are not defendants' "act or deed  *  *  *  and were not executed for or in their behalf by any person authorized to bind them or either of them in the premises," and that they demand a jury to try the issues joined. Upon these pleas plaintiff joined issue. At the close of all the evidence the parties each moved for a peremptory instruction in its favor. The court treated such joint submission as a withdrawal of the case from the jury and, upon consideration, found all the issues in favor of the plaintiff, distinctly finding that plaintiff is the owner of the coupons "for value in due course," and judgment was accordingly entered for plaintiff. Defendants prosecute error upon 12 assignments, and these assignments are considered in the opinion as far as necessary.

Elias Gates, of Memphis, Tenn., for plaintiffs in error.
Wm. R. Collins, of Cincinnati, Ohio, for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and COCHRAN, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). We are called upon to determine which of two innocent parties shall suffer a material loss, and their rights must depend upon the application of principles which in effect may engender more serious losses than are presently involved; the performance of such a duty is, to say the least, perplexing; and this is emphasized by the fact that our conclusion is not in harmony with that reached by the Supreme Court of Tennessee concerning interest coupons similar to those in issue here. Weil v. Newbern, 126 Tenn. 223, 148 S. W. 680, L. R. A. 1915A, 1009, Ann. Cas. 1913E, 25.

What considerations must enter into the question whether the coupons in suit are binding obligations of the town of Newbern? It is manifest that the binding effect of the bonds to which the coupons in dispute belong must be considered, although the bonds themselves are not in suit. Concededly, the statutes incorporating the town in question under the name of "Mayor and Aldermen of Newbern," and enabling the corporation to issue these bonds, are constitutionally valid enactments; and, apart from a question made upon the election at which the electors of Newbern voted upon the issuing of such bonds, the ordinances relating to the issue and sale of the bonds are admittedly valid. The facts that the bonds comprised in the entire authorized issue ($50,000 par value) are outstanding, that the interest accruing on one-half of such issue (though not including the school bonds) is regularly paid by the town, that all the bonds (13 in number) with the cou-

pons in suit attached thereto were acquired by the plaintiff bank and others through loans and purchases made before maturity of any of such coupons, in good faith and for value, without notice of any defect in respect either of issue or delivery thereof, and that plaintiff subsequently obtained the rights of these former holders in such of these coupons as it had not previously acquired, are not under the evidence open to substantial denial. The school bonds mentioned severally bear date September 1, 1907, and contain a promise—

"to pay to bearer the sum of one thousand dollars * * * on the first day of September, A. D. 1927, together with interest on said sum from the date hereof, until paid, at the rate of six per centum per annum, payable semiannually on the first days of March and September in each year, upon presentation and surrender of the interest coupons hereto attached, as they severally become due. Both principal and interest are payable at the Hanover National Bank, in the city of New York * * * and for the prompt payment of this bond * * * the full faith, credit and revenues of said town are hereby irrevocably pledged."

And each bond also contains recitals which state that it—

"is one of a series of 25 bonds, of like date and tenor, aggregating $25,000 issued by the mayor and aldermen of Newbern for the purpose of erecting and furnishing a school building in and for the town of Newbern, pursuant to and in full compliance with the provisions of an act of the General Assembly of the state of Tennessee," giving its title and date, "and as ordered by a vote of a majority of all the qualified voters of the town of Newbern, at an election duly and legally held by order of the board of mayor and aldermen of said town," on a date named, "and under and in accordance with an ordinance duly passed" by that board "at a meeting thereof, duly and regularly called and held" on a named date.

It is also certified and recited:

"That all acts, conditions and things required to be done precedent to and in the issue of this bond have been properly done, happened and been performed in regular and due form as required by law."

Each bond is signed by the mayor, countersigned by the clerk, and attested by the seal of the town of Newbern, and such execution purports to have been directed by the board of mayor and aldermen.

[1, 2] It is practically admitted that if the bonds had been signed by the mayor and aldermen the recitals mentioned would have estopped the town of Newbern from denying the validity of either the bonds or coupons. It is insisted, however, that since only the mayor and the clerk signed the bonds, while the mayor and aldermen were the officers authorized to issue them, every purchaser was bound at his peril to examine into the authority of the mayor and clerk to execute the bonds; and that this would have led to the discovery of an infirmity which justifies the pleas of non assumpsit, nil debet and non est factum, relied on. The mayor and clerk appear to have been empowered by two different ordinances to execute the bonds. The first one was passed April 19, 1907, "to provide for the issuance of $50,000 in coupon bonds." The third paragraph of the ordinance provides that "the bonds so to be issued shall be signed by the mayor and clerk of said board of mayor and aldermen." The second ordinance was passed August 17, 1907, to fix "the form and date of the $25,000 school bonds, $15,000 street bonds, and $10,000 water and light bonds." The form

of the school bonds and that of the school coupons are set out, and the testatum clause of the former is as follows:

"In testimony whereof, the said mayor and aldermen of Newbern have caused this bond to be signed by the mayor and countersigned by the clerk of said board of mayor and aldermen, with the corporate seal attached, this third day of September, A. D. 1907."

And the name and official title of the mayor, and similarly of the clerk as countersigning, are printed immediately under the testatum clause and also at the end of the form of coupon. The first of these ordinances, however, is the one containing the provision which it is claimed would inform an intending purchaser, not alone of the author- ity of the mayor and clerk to execute the bonds, but also of the facts relied on to invalidate the bonds. It is stated in the preamble of that ordinance:

"The election heretofore ordered by the mayor and aldermen of Newbern to be held to ascertain the will of the qualified voters of the town of Newbern * * * as to whether or not the mayor and aldermen should issue the fifty thousand dollar (s) in coupon bonds as provided for in the acts of the Gen- eral Assembly * * * passed March 13, 1907 * * * was held on the 16th day of April, and resulted in showing that a majority of all qualified voters in said town favored the issuance of bonds as provided for in said acts of the General Assembly, the result of said election having been duly and regularly certified by the sheriff of Dyer county * * * under whose super- vision the said election was held. * * *"

It is claimed that the sheriff was not the authorized official to super- vise and certify to the result of this election, and that the presence of the names of the mayor and clerk on the bonds put intending purchas- ers upon inquiry as to the validity alike of the election and the bonds. This view is sustained in Weil v. Newbern, supra, 126 Tenn, at pages 257, 265, 148 S. W. 680, L. R. A. 1915A, 1009, Ann. Cas. 1913E, 25; and indeed it was there held that the statement contained in the ordi- nance that the election was held by the sheriff "gave plenary informa- tion that it was a void election, and that the board of mayor and alder- men of Newbern had no power to issue the bonds. There could, therefore, be no innocent purchaser or holder of such bonds." This was the result of the court's construction of certain statutes of Ten- nessee which appear in the record. One was passed February 10, 1897 (Acts Tenn. 1897, p. 131), and its purpose is indicated by its title:

"An act to secure pure elections by creating boards of commissioners of election in counties having a population less than 50,000 inhabitants, com- puted by the federal census of 1890, and any subsequent federal census, and defining the duties and powers thereof."

While the operation of this statute was limited to a particular class of counties, it is clear that it was applicable to all counties of the state, regardless of the number, falling within the class specified, and so was in that sense a general rather than a special law. Commissioners were to be appointed by the governor, for every county, and were to com- prise in each county "a board of three persons to be known as the com- missioners of election." The commissioners of each county were re- quired "within sixty days prior to every election to be held in their county, and in due time therefor, to appoint three judges for each and

every voting place in their county, to superintend the election at the precinct or voting place for which said judges shall be appointed," and also within such time to appoint two clerks of election for each of such voting places. The commissioners were further authorized to appoint "the officer or officers of election at each voting place to the exclusion of the sheriff" theretofore "possessing said power of appointment." Further, "the county courts, mayors, boards of mayor and aldermen and sheriffs of and in the said counties within the provisions of this act" were "divested of the authority to appoint judges or inspectors and clerks of elections," and all statutes vesting such officials with such power of appointment, which were inconsistent with this provision, were repealed. The officer holding an election was required to deliver the returns to the commissioners, who were to compile the returns at the courthouse, and certify the result and also "to deliver to each person elected a certificate of his election." It is agreed that the census population of Dyer county was at the time now in question less than 50,000.

Now, conceding that this statute, considered alone, would in terms embrace an election, not merely for the selection of local officers, but, also, for ascertaining the will of the electors concerning any question arising in a political subdivision of any county of the class erected by this statute, still (in view of the Newbern charter subsequently enacted), the concession is not determinative of the question whether the statute was exclusively applicable, or even applicable at all, to the election here in dispute. It was more than four years after that statute was enacted that the town of Newbern was incorporated. The charter was granted on April 11, 1901, and was entitled "A bill to incorporate the town of Newbern, in Dyer county, and to define its powers and provide for the election of officers" (Acts Tenn. 1901, p. 1076), the corporate name being, as we have seen the "Mayor and Aldermen of Newbern." The act describes the boundaries of the corporation, provides for succession, and invests the corporate body with the usual attributes and powers of a municipality. Section 6 of the act is in material part as follows (Id. 1081):

"Sec. 6. Be it further enacted, that the sheriff of Dyer county, after giving ten days' notice, shall by himself or one of his deputies hold an election in the town of Newbern on the third Tuesday of November, 1901, and said election shall be held for the purpose of electing mayor, aldermen, recorder, marshal, and the mayor, aldermen, recorder, and marshal elected at said time shall serve for two years. And thereafter, on the third Tuesday of November, there shall be an election held for the purpose of electing a mayor, aldermen, recorder, and marshal for said town to serve for the ensuing two years, it being the intention of this act to provide for the election of a mayor, aldermen, recorder, and marshal of said town one in every two years. The polls shall be open at 10 o'clock a. m., and closed at 4 o'clock p. m., of that day. The board of mayor and aldermen may, by ordinance, make any additional provisions that may be found necessary to prepare for and conduct said election, if the sheriff fail to hold said election at the time herein mentioned. It shall be his duty to hold it as soon thereafter as possible, giving the required notice. If there be no sheriff, or if no notice has been posted by him on the tenth day before the regular election, or if notices have been posted by him but he is not present himself or deputy on the day of said election; then in either of said events, the coroner, or some person who may be appointed by the board of mayor and aldermen shall perform all the duties in and about said election required of the sheriff, * * * and the officers holding said

election shall make out and deliver, within three days, to each a certificate of their election; and the judges and clerks, after being sworn as provided by the election laws of this state, shall perform similar duties of judges and clerks in state and county elections. And after the votes are counted and the results ascertained, the officers holding said election shall file poll lists and other papers showing the results of said election, properly certified, with the recorder, who shall preserve them."

Claim was made in Weil v. Newbern, supra, that this section conferred upon the sheriff of Dyer county the power to conduct all corporate elections; but it was held (126 Tenn. 250, 148 S. W. 680, L. R. A. 1915A, 1009, Ann. Cas. 1913E, 25) that while the section does purport to confer such power, it does so "only in a special and limited way; that is, for the purpose of electing a 'mayor, aldermen, recorder and marshal.'" It would seem that the result of this is to place all elections in which the town of Newbern is alone interested under the control of the sheriff, except such as call for an expression of the town electors upon questions involving their own indebtedness and ultimate taxation, like the issue of municipal bonds, to defray the cost of purely local improvements.

It is insisted both that this construction, and that the conclusion drawn from it that the bonds are void in the hands of bona fide purchasers, are binding upon the federal courts. It is to be observed that the infirmity thus claimed to inhere in the bonds as a result of such a construction of the statute does not show that the electors did not in truth vote, and favorably, upon the question of issuing the bonds; nor does it show that the election in fact held was not officially supervised and reported under apparent color of law; indeed, the contention is reducible to a claim of mistake made in officials, that is, in having the sheriff instead of the commissioners of election, to supervise the election and report its result. We say the claim is simply one of mistake, because there is not a suggestion of fraud or even unfairness in so obtaining the expression, and the "order," of the voters respecting the issue and use of the bonds. Acts Tenn. 1907, p. 343, § 3.

How far then are the federal courts bound by the decision in Weil v. Newbern? It is observable that the decision in that case was not rendered until after the presently contested bonds with their coupons had passed into the hands of bona fide holders for value, without notice of the defect in the election now asserted; and this court has held with reference to an analogous situation, that "the courts of the United States exercise an independent judgment." Rondot v. Rogers Tp., 99 Fed. 202, 210, 211, 39 C. C. A. 462, 470. This was an apparent recognition of one of the settled exceptions to the general rule that the federal courts accept the interpretation of a state statute by the highest court of the state as settling the validity and meaning of the statute. It is manifest that the exception in that instance proceeded upon the principle that where a contract has been entered into in virtue of a state statute, a federal court obtaining jurisdiction of a question concerning the validity, effect, or obligation of the contract, will exercise an independent judgment, although "leaning to an agreement with the state court," where it appears that the decision of the state court was rendered after the rights involved in the controversy originated. Lou-

isville Trust Co. v. City of Cincinnati, 76 Fed. 296, 301, 22 C. C. A. 334 (C. C. A. 6). The present case need not, however, be rested alone upon those decisions or the class they represent, for a question of general commercial law arises here which of itself calls for the independent judgment of the federal courts. It is of course thoroughly settled and understood that upon questions of general law the decisions of the state courts are not controlling. Swift v. Tyson, 16 Pet. 1, 17, 10 L. Ed. 865; B. & O. R. R. v. Baugh, 149 U. S. 368, 370, 13 Sup. Ct. 914, 37 L. Ed. 772, et seq.; Burgess v. Seligman, 107 U. S. 20, 33, 34, 2 Sup. Ct. 10, 27 L. Ed. 359. As Mr. Justice Harlan said in Presidio Co. v. Noel-Young Bond Co., 212 U. S. 58, at page 73, 29 Sup. Ct. 237, at page 242, 53 L. Ed. 402:

"In respect of the doctrines of commercial law and general jurisprudence the courts of the United States will exercise their own independent judgment, and in respect to such doctrines will not be controlled by decisions based upon local statutes or local usage, although, if the question is balanced with doubt, the courts of the United States, for the sake of harmony, 'will lean to an agreement of views with the state courts.' "

It might therefore be conceded for present purposes that the federal courts must, regardless of their own opinions, yield to the ruling of the learned Supreme Court of Tennessee in Weil v. Newbern that the commissioners of election, and not the sheriff of the county, were the proper officials to conduct and report upon the election in question; but this concession would not require us to adopt the conclusion drawn from the ruling that the bonds are void in the hands of bona fide holders. Such a question as this was directly involved and decided in Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704, 27 L. Ed. 424. It was there claimed that the township bonds in dispute had been sanctioned at an election conducted by a moderator chosen by the electors present, when it should have been presided over and the returns made by the supervisor, assessor, and collector of the township (107 U. S. 539, 2 Sup. Ct. 704, 27 L. Ed. 424); and it appears that the Supreme Court of Illinois had held that this defect in the proceeding rendered the bonds absolutely void. In the course of the opinion in the Pana Case it was said (107 U. S. 540, 2 Sup. Ct. 714, 27 L. Ed. 424):

"It is insisted that this court is bound to follow this decision of the Supreme Court of Illinois and hold the bonds in question void. We do not so understand our duty. Where the construction of a state constitution or law has become settled by the decision of the state courts, the courts of the United States will, as a general rule, accept it as evidence of what the local law is. Thus, we may be required to yield against our own judgment to the proposition that, under the charter of the railway company, the election in this case, which was held under the supervision of a moderator chosen by the electors present, was irregular and therefore void. But we are not bound to accept the inference drawn by the Supreme Court of Illinois, that in consequence of such irregularity in the election the bonds issued in pursuance of it by the officers of the township, which recite on their face that the election was held in accordance with the statute, are void in the hands of bona fide holders. This latter proposition is one which falls among the general principles and doctrines of commercial jurisprudence, upon which it is our duty to form an independent judgment, and in respect of which we are under no obligation to follow implicitly the conclusions of any other court, however learned or able it may be."

See, also, Supervisors v. Schenck, 72 U. S. (5 Wall.) 772, 774, 784, 18 L. Ed. 556; Oregon v. Jennings, 119 U. S. 74, 94, 7 Sup. Ct. 124, 30 L Ed. 323.

[**3, 4**] It results that the federal courts must exercise an independent judgment upon the question whether the town of Newbern is estopped to deny, as against the plaintiff, that these bonds were issued conformably, in all respects, with the recitals therein contained. It is admitted, and is to be borne in mind, that the town of Newbern was clothed with power to issue just such bonds as these upon the approval of a majority of its electors; that the town, through steps in fact taken by its board of mayor and aldermen and its electors, sought to exercise the power and to issue the bonds; and that the plaintiff is an innocent holder of the securities sued on, for value and without actual notice of any defect in the proceedings in virtue of which the bonds were put into circulation. We are therefore not concerned with a question that might arise in a case, such as has in substance been suggested for illustrative purposes, where, either in the presence or in the absence of power to issue bonds no steps are in fact taken by the appropriate municipal agencies to exercise such a power, the executive officers fraudulently, though formally, execute bonds and dispose of them in the name and under the pretended promise and recitals of the municipality. In the present case it is admitted, as we have seen, that estoppel could not be escaped if the bonds had been signed by the mayor and aldermen of Newbern; this admission was rightly made. Presidio County v. Noel-Young Bond Co., supra, 212 U. S. at pages 64, 65, 67, 29 Sup. Ct. 237, 53 L. Ed. 402. The efforts made here to avoid estoppel are bottomed upon the fact that the authority of the mayor and clerk to execute the bonds does not appear in the statutes but only in the ordinances, and, consequently, that intending purchasers were bound at their peril to examine these ordinances. This does not question the genuineness of the signature of either of these officials; nor does it question the genuineness of the corporate seal which appears on the face of the bonds; indeed, it is not claimed that the bonds were not in truth signed and sealed by these officials; and, further, the record contains an admission "that the lithograph signatures on the coupons are lithographic facsimiles of the signatures" of the mayor and clerk. The natural inference arising from the presence of these virtually admitted official signatures and seal is that the officers acted with due authority; moreover, this is the prima facie effect in an evidential sense; and in such cases the uniform course of decision in the Supreme Court of the United States has been to treat the signatures of the executive officers and the seal of a municipal corporation as importing authority so to execute the bonds, and this, too, where the authority of the signatory officers has not appeared in the statutes. Thus, in Von Hostrup v. Madison City, 68 U. S. (1 Wall.) 291, 297, 17 L. Ed. 538, Mr. Justice Nelson said:

"Another objection taken is, that the proviso requiring a petition of two-thirds of the citizens, who were freeholders of the city, was not complied with. As we have seen, the bonds signed by the mayor and clerk of the city recite on the face of them that they were issued by virtue of an ordinance of the

common council of the city, passed September 2, 1852. This concludes the city as to any irregularities that may have existed in carrying into execution the power granted to subscribe the stock and issue the bonds, as has been repeatedly held by this court.",

In Hackett v. Ottawa, 99 U. S. 86, 95, 25 L. Ed. 363, it appears that the bonds in question contained recitals of their issue in virtue of the charter and certain specified ordinances of the city, but that the bonds had been executed by the mayor and the clerk and authenticated by the corporate seal; and in the course of the opinion Mr. Justice Harlan said:

"Such a representation by the constituted authorities of the city, under its corporate seal, would naturally avert suspicion of bad faith upon their part, and induce the purchaser to omit an examination of the ordinances themselves. It was, substantially, a declaration by the city, with the consent of a majority of its legal voters, that purchasers need not examine the ordinances, since their title indicated a loan for municipal purposes. The city is therefore estopped, by its own representations, to say, as against a bona fide holder of the bonds, that they were not issued or used for municipal or corporate purposes. It cannot now be heard, as against him, to dispute their validity. * * * It would be the grossest injustice, and in conflict with all the past utterances of this court, to permit the city, having power under some circumstances to issue negotiable securities, to escape liability upon the ground of the falsity of its own representation, made through official agents and under its corporate seal, as to the purposes with which these bonds were issued."

The ruling in that decision was followed, in respect of bonds similarly signed, in Evansville v. Dennett, 161 U. S. 434, 435, 444, 16 Sup. Ct. 613, 40 L. Ed. 760; and this is likewise true of the ruling made in Waite v. Santa Cruz, 184 U. S. 302, 304, 315 to 319, 22 Sup. Ct. 327, 46 L. Ed. 552. See, also, Myer v. City of Muscatine, 68 U. S. (1 Wall.) 384, 388, 17 L. Ed. 564; City of Lexington v. Butler, 81 U. S. (14 Wall.) 282, 295, 20 L. Ed. 809; Grand Chute v. Winegar, 82 U. S. (15 Wall.) 355, 358, 373, 21 L. Ed. 170; Commissioners, etc., v. Thayer, 94 U. S. 631, 632, 642, 24 L. Ed. 133 et seq.

Furthermore, Fairfield v. Royal Independent School Dist., 116 Fed. 838, 54 C. C. A. 342 (C. C. A. 8), reviews and reverses the decision below, which is reported in (C. C.) 111 Fed. 453, 455, and where it appears that the president and secretary of the board of directors of the school district were authorized by resolution of the board to issue and deliver the bonds in dispute, and we do not discover that such authority otherwise existed. Judge Sanborn, in announcing the opinion of the Circuit Court of Appeals, stated the question thus (116 Fed. 840, 54 C. C. A. 344):

"Is a bona fide purchaser of municipal bonds, which recite that they were issued in pursuance of a statute authorizing the municipality to issue them for a lawful purpose, and in conformity with an ordinance or a resolution of a specified date, which discloses the fact that they were issued for an unlawful purpose, charged with notice of the terms and contents of the ordinance or resolution?"

After stating that the question was not new, and commenting upon decisions there cited, the learned judge said (116 Fed. 843, 54 C. C. A. 347):

"These decisions and opinions of the Supreme Court conclusively answer the question presented in this case, and render any independent discussion of

it unnecessary and useless. They demonstrate the fact that, so far at least as the federal courts are concerned, it is now the settled law of this country that a bona fide purchaser of municipal bonds, which recite that they were issued in pursuance of a statute which authorized the municipality to send them forth for a lawful purpose, and which also recite that they were issued in conformity with an ordinance or resolution whose date or title is specified in the recital, which, if read, would disclose the fact that they were issued for an unlawful purpose, is not charged with notice of the terms or contents of the ordinance or resolution, and the municipality cannot avail itself of the facts there disclosed to defeat its bonds."

It must be said that these decisions do not distinctly discuss the question whether the presence of the official signatures of corporate executive officers, accompanied by the corporate seal, puts purchasers on inquiry as to the authority of those officers; but if the decisions mean what they say, it is certain that an intending purchaser of the bonds now in dispute might safely have relied upon the bonds themselves both as to the verity of their recitals and the authority of the executing officers. To be specific, the intending purchaser was not required to look into the ordinance which is referred to in the recitals of the bonds in order to gain protection under a good faith purchase, without actual notice of the infirmity claimed in respect of the election. This, it may be remarked, would undoubtedly be true as to purchases of bonds of a private corporation, bearing the guaranty of a railway company whose president and secretary, under its seal, had executed the guaranty (Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 574, 575, 19 Sup. Ct. 817, 43 L. Ed. 1081); though it is to be noted that while considering the rule applicable to private corporations and the decision in Royal British Bank v. Turquand (1856) 6 El. & Bl. 327, Mr. Justice Gray, apparently relying upon such familiar cases as Knox County v. Aspinwall, 21 How. 539, 545, 16 L. Ed. 208, said:

"And the justices of this court, while differing among themselves in the application of the principle to municipal bonds, have always treated Royal British Bank v. Turquand as well decided upon its facts."

It is true that this would indicate that the learned justices had not always been in harmony as respects the application of the principle to municipal bonds; yet we do not find anything to modify the Supreme Court decisions before cited in that behalf.

We are not unmindful of what was said by this court in Rondot v. Rogers Tp., supra, 99 Fed. 212, 39 C. C. A. 462, to the effect that a purchaser accepting a township bond signed by the supervisor and treasurer of the township "ran the risk of the actual existence" of authority in such officers to execute the bonds; but it does not seem to have been claimed by the defendant in that case that an intending purchaser was required to examine any of the proceedings of the board for the purpose of ascertaining the existence or not of authority in the signing officers; on the contrary, evidence was offered on the question of whether a resolution vesting such authority was ever adopted. The precise question then with which we are now concerned does not seem to have arisen in that case; indeed, in view of the decisions of the Supreme Court above cited, we cannot think that it was intended in the Rondot Case to decide that if a resolution vesting

authority had existed, it was necessary that it should have been examined prior to the purchase of a bond. It cannot be forgotten that one of the peculiar features of the instant case is that the defendant in effect admits the existence of authority in the mayor and clerk to execute the bonds, since it insists that if a purchaser had examined the ordinance he would have discovered this authority, as well as the fact that the vote was supervised by an officer subsequently held to have been without authority. Surely the federal rule of decision pointed out, shows that such a defense as this is not sufficient to discredit the present bonds.

[5] It is claimed that the bonds are invalid because of certain changes that were made in the form fixed by ordinance. The form so fixed made the bonds payable in New York City, and before the bonds were executed the place of payment was made definite by the insertion of the name of the Hanover National Bank of that city. The other alteration complained of is an addition that was made at the end of the recitals before execution of the bonds, to the effect that the total debt of the town including the bonds in question did not exceed any limit of indebtedness prescribed by the laws of the state, and that provision for the levy of an annual tax sufficient to pay the principal and interest upon the bonds as they fall due, had been made and would be duly levied upon all the taxable property in the town. We are not impressed with the contention that these changes amount to material alterations; neither could affect the identity of the contract or otherwise operate to the prejudice of the town. The first operated to the benefit and convenience of the maker of the bonds; and the other in no way changed the nature or the amount of the maker's obligation, and, moreover, the bond in its original form otherwise distinctly pledges "the full faith, credit and revenues" of the town. These matters seem to us too plain to require citation of decisions, though we call attention to the following: As to the first insertion, Major v. Hansen, 16 Fed. Cas. No. 8,982 by Judge Drummond; Shuler v. Gillette, 12 Hun (N. Y.) 278, 281; as to the second, Commonwealth v. Emigrant Industrial Savings Bank, 98 Mass. 16, 17, 93 Am. Dec. 126; Crawford v. Dexter, 5 Sawy. 201, 204, Fed. Cas. No. 3,368.

[6, 7] It is contended that the board of mayor and aldermen never authorized the mayor and clerk, or any one else, to deliver the bonds. It is fairly to be deduced from the evidence concerning the disposition made of the entire issue of bonds ($50,000), that they were sold and delivered through proper representatives of the town to Hays & Sons of Cleveland, Ohio; that Hays & Sons paid for 11 of the street, light and water bonds, and returned to the town the remaining 14 bonds of that issue which were then sold to others, but that the school bonds were neither paid for nor returned. It is plain enough that the representatives of the town dealt with Hays & Sons on the theory that they were solvent; this was the mistake and the misfortune alike. So far as the record discloses, there is no suggestion of fraud in the transactions save only through charges made against Hays & Sons after discovery of the fact of their insolvency. The decisive point,

however, is that the validity of the plaintiff's title to the securities here involved does not depend upon the transactions with Hays & Sons. We think the finding made by Judge McCall, to the effect that the plaintiff became the owner of the coupons in suit for value and in due course, is sustained by the evidence; every coupon sued on passed from the hands of Hays & Sons to bona fide holders, before maturity and for value, in transactions conducted in due course and without notice on the part of such holders of any of the defects now claimed and relied on respecting the issue and sale of the bonds. This alone brings the case well within the rule laid down in Cromwell v. County of Sac, 96 U. S. 51, 52, 57, 59, 24 L. Ed. 681; and it is to be observed that the bonds there in controversy were issued for the erection of a courthouse and were delivered to the contractor, but that "a courthouse was never constructed by the contractor or any other person pursuant to the contract." Further, the uniform Negotiable Instruments Act existed as a law of Tennessee when these bonds were authorized and issued (Acts Tenn. 1899, p. 140), and section 16, p. 144, provides that where a negotiable instrument "is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him, so as to make them liable to him, is conclusively presumed." Buzzell v. Tobin, 201 Mass. 1, 2, 86 N. E. 923; Massachusetts Nat. Bank v. Snow, 187 Mass. 159, 163, 164, 72 N. E. 959; Madden v. Gaston, 137 App. Div. 294, 296, 121 N. Y. Supp. 951; 1 Daniel on Neg. Inst. (6th Ed.) § 838.

[8] We do not understand, in view of the motions made respectively by plaintiff and defendants for a directed verdict, that the action of the trial judge in treating the case as withdrawn from the jury and submitted to the court on both the facts and law is questioned; but if any of the assignments of error were so intended, they have not been argued and so must be regarded as waived.

Upon all these considerations, and with great deference to the learned Supreme Court of Tennessee, we hold that the defendant is estopped to deny the recitals contained in the bonds from which the coupons in issue were detached. An order will therefore be entered affirming the judgment, with costs.